## LUCAS *et al.* v. RINGSRUD, Secretary of State.

1. An act of the South Dakota legislature, approved March 5, 1891, provides for the printing of ballots containing the names of those whose nominations are certified as required. This certificate is to be filed 30 days before election, and must state the names of the candidates, their business, residences, and business addresses, and the offices for which they are nominated, and, if the nominations are made by a convention, it must designate the party represented, and be signed by the chairman and secretary of such convention, who must append to their signatures their business, business addresses, and residences. In case a convention has given power to fill vacancies to a committee, it must file a certificate stating the cause of the vacancy, the name of the person nominated, and the one whose place he takes, together with such other facts as are required in the original certificate.

2. An original certificate purporting to state nominations made by a party convention, without giving the business, residences, or business addresses of the candidates, and signed by the chairman and secretary of the convention, without the addition of their residences and business addresses, failed to comply with the law, and when presented was properly rejected by the secretary of state.

3. A certificate purporting to fill a vacancy in a nomination presented for filing less than 30 days before an election, stating neither the cause of the vacancy, whether by resignation, declination, or death, in the original nomination, nor the authority to fill it, nor giving the name of the one whose place is to be filled, is a failure to comply with the provisions of the act, and the certificate should not be filed, nor the nominee thus designated be printed on the ballots.

4. When no certificate of original nomination has been filed in the office of the secretary of state, there can be no substitution of names, because the secretary of state has nothing in his office showing who had originally been nominated for the office, and whose place the substitute is to fill.

(Syllabus by the Court. Opinion filed Oct. 28, 1892.)

Application by J. A. Lucas, chairman, etc., and others, for a writ of *mandamus* to compel A. O. Ringsrud, secretary of state, to file in his office the certificate of nominations made by the Prohibition party in the state of South Dakota. Writ denied.

*Shunk & Hughes*, for plaintiffs.

*Horner & Stewart*, for defendant.

BENNETT, P. J. This is an original application for a writ of *mandamus* to compel the defendant to file in his office the certificate of nominations made by the Prohibition party of this state. The facts as they appear in the affidavit which is the basis of the application are in substance as follows; which facts are, however, ·denied by the defendant: On the 9th day of June, 1892, a mass convention of the Prohibition party was held in the city of Watertown for the purpose of electing delegates to the national convention of that party, and for placing in nomination presidential electors. At that convention the following named persons were duly and regularly nominated for the office of presidential electors, to be voted for at the general election, viz.: J. P. Hewes, J. S. Akers, and A. R. Cornwall. A state central committee was also appointed, and empowered to fill any and all vacancies that then or thereafter should exist, either by resignation or by the certificate of nomination being or becoming insufficient or inoperative. This committee was duly orgaized by the appointment of a chairman and secretary, and, under the power delegated to it by the convention, nominated one C. B. Warren as one of the presidential electors of said party. A certificate of these persons named as presidential electors was executed by the chairman and secretary of said convention and of the executive committee. On the 8th day of October, 1892, it was tendered to the Honorable A. O. Ringsrud, secretary of state, for filing in his office. On the 14th day of September, 1892, another mass convention of this party was

held in Sioux Falls, for the purpose of placing in nomination candidates for members of congress and for state offices. At this convention candidates for governor, lieutenant governor, secretary of state, and attorney general were named, and the state central committee was empowered to fill any and all vacancies then or thereafter existing on said ticket, and to remedy or cure any defect which might arise in any certificate that might be required to be filed by the statute in the office of the secretary of state. The central committee afterwards did nominate and name certain persons for the remaining state offices which were not named by the convention, and made out a certificate of such nominations, which was signed by the chairman and secretary of the committee and chairman and secretary of the convention. These certificates were presented to the defendant, as secretary of state, for filing, on the 19th day of October, 1892, which he refused to do because the residences and business addresses of the nominees were not stated therein, and for the further reason that the residences, business, and business addresses of the chairman and secretary of the said convention and of the state central committee were not added to their respective names, and because it was not presented within the time prescribed by law. On the 20th day of October, 1892, the state central committee again met, as is stated in the affidavit, for the purpose of curing the claimed insufficiencies or inoperativeness of the previous certificates. But instead of amending or supplying the deficiencies of the former certificates, the committee proceeded "to place in nomination a full ticket of presidential electors, members of congress, and state officers," and then executed another certificate of the nominations thus made, and on the 21st of October presented it to the secretary of state for filing, which he refused to do because not presented in proper time.

It is because of these several refusals of the secretary of state to file these certificates that we are asked to issue the writ of *mandamus* to compel him to do so. Chapter 57, Sess. Laws, 1891, known as the "Election Law," provides but two modes whereby nominations for public offices to be filled by election can be made: (1) By a convention or primary meeting, representing a political

party or principle. (2) By a certificate of nomination containing the names of the candidates for the offices to be filled, signed by electors residing within the state, district, or political division in which the officer is to be elected. After the nominations in either way have been made, the law requires that a certificate of all nominations shall be made in writing, containing the name of each person nominated, his residence, his business address, and the office for which he is named, and shall designate the party or principle which such nomination represents, and shall be signed by the presiding officer and secretary of the convention making the nomination, if it be made by a convention, who shall add to their signatures their respective places of residence, their business, and business addresses. The law then provides that this certificate, as thus made and executed, for all officers to be elected by the votes of the state at large, shall be filed in the office of the secretary of state not less than 30 days before the day fixed by law for the election to take place. The first certificate of the nominations made by the Prohibition party, as shown by the exhibit, is clearly insufficient, because it fails to give the residence or business address of any of the officers purported to be nominated, and it also fails to state the places of residence, the business, and business addresses of the presiding officer and secretary of the convention or primary meeting at which such nominations were made, and was therefore properly rejected. What the certificate of nomination shall contain is plainly stated in the statute, and any one who wishes to avail himself of the benefits of this law must substantially comply with its requirements. Until this is done the secretary of state is justified in refusing to place such a document on file. The second certificate was not presented for filing 30 days or more before the date of the election, and in this respect did not comply with the law, which says: "Certificates of nomination to be filed with the secretary of state shall be filed not less than thirty days before the day fixed by law for the election of the persons in nomination." See section 8, c. 57, Sess. Laws, 1891. The record before us showing that the certificate was presented on the 19th day of October, it was less than 20 days before the election. For this reason, no matter how formal the certificate presented

was, it was not entitled to be filed, and the action of the secretary of state was eminently proper and right.

From the third certificate which was presented to and refused by the secretary of state, we learn that the state central committee of this party met on the 20th day of October, 1892, for the purpose of curing the insufficiencies of the previous certificate which had been refused by the secretary of state. After meeting, it proceeded to put in nomination certain persons for the respective offices named as substitutes for themselves, to be voted for at the general election to be held November 8, 1892, as follows: "For presidential electors of the state of South Dakota the following named persons were duly nominated: A. R. Cornwall, whose residence and business address is Aberdeen, Brown county, South Dakota, and who is substituted for himself; J. P. Hewes, whose residence and business address is Clear Lake, Deuel county, S. D., and who is substituted for himself,"—and so on through all the presidential electors and the various state officers. It will be noted that this certificate was not presented for filing 30 days or more before the election. As a certificate for original nominations, therefore, it was offered out of time. It is, however, evident that this committee did not intend that it should be considered as a certificate of original nominations, but a certificate of substitutes to fill vacancies which had arisen in the original nominations after they were made. This is made to appear very plainly from the wording of the certificate itself, wherein it says the nominee "is substituted for himself." If such were the intention, the certificate is not within the spirit or intention of the law. Section 11 provides that the certificate for filling vacancies shall state for whom the person nominated is to be substituted. This presupposes that some other person has been nominated, and the secretary of state has previously filed in his office the name of the person for whom the new nominee is to be substituted, and that the name substituted is to fill a vacancy in the nominations before made and filed with him. This construction is made clear by the wording of the last clause of the section, which provides that "the secretary of state shall certify to the several county auditors the name of the person for whom such nominee is to be substi-

tuted." If no person as a candidate for the office of the particular party had been before certified to the county auditors, what necessity would there be for notifying that officer that the new name had been substituted for the original one? Under any other construction these substitutes would be new and original nominations and new names added to the list of candidates, which was not contemplated by the legislature. Therefore it cannot be claimed that the certificate offered to be filed on the 20th of October could be a certificate of substitutes for nominees who had withdrawn, resigned, or died since the nominations were made.

It was in no sense a filling of a vacancy, but a nomination made by the state central committee. The record shows that the very men who were named by the committee had been nominated by the party previous to the meeting of the committee at Salem. but it fails to show that any of them had resigned or withdrawn since so nominated. Consequently there could have been no vacancy to be filled. The certificate itself precludes any such conclusion. The facts disclosed by the record also show that the convention of the Prohibition party met at a time early enough to have had a proper certificate of its nominees filed in the office of the secretary of state, but for some reason unknown to us the officers of that party whose duty it was to have done so neglected to perform their duty within the time prescribed by law. Afterwards, when too late, the executive committee of that party met and nominated the same persons for the various offices, and made a certificate of the facts, and presented it to the secretary of state, claiming the certificate was a substitution for persons previously nominated. The secretary of state had no evidence of the fact, for no certificate had been filed in his office showing what nominations had been made. Had this been done, it would have been his duty to have filled by substitution any vacancy occurring in the nominations within a reasonable time before the election. There must be an original nomination on file before a substitute can take its place. Holding these views upon the merits of the application, we must decline to issue the writ.

KELLAM, J. While I do not wish to record any affirmative disagreement with the conclusions expressed in the foregoing opinion,

I think the court should decline to entertain this application. This court has on several occasions stated the grounds and conditions upon which it would feel justified in actively exercising the original jurisdiction given it by the constitution. As applied to this case an indispensable ground would be that public rights would be endangered and perhaps lost by the delay incident to a litigation and settlement of the questions involved through the ordinary judicial channels. When, therefore, it is perfectly patent to everybody that the decision of this court, if promulgated instantly on the submission of the application, would be too late to have any practical effect, either for or against the plaintiffs in respect to the public right which they claim to represent, the reason is gone which would justify the exercise by this court of its exceptional and extraordinary original powers. If the object of the application is simply to obtain a construction of this statute, no reason is shown for the exceptional procedure of applying to this court in the first instance, and consequently no reason for the employment of its original jurisdiction. If its object is to conserve public rights of which plaintiffs are the guardians, it is evident they have so long delayed their application that the judgment of the court would be entirely unavailing for that purpose. The law requires that in every county sample ballots in the form to be used on election day shall be "printed, and in the possession of the county auditor or other officers of boards charged with the duty of preparing such ballots, ten (10) days before the day of the election." This would be not later than October 29th. This application was argued and submitted on the afternoon of the 27th. The court will take judicial notice that its decision, if made at once, could not be communicated to and acted upon by the county auditors of the state in time to have any effect upon the ballots to be printed and used at the ensuing election. I do not see how, under these circumstances, we can entertain and decide this application as though it were properly before us, without violating the very principle which we have heretofore announced as controlling the exercise of the original jurisdiction of this court, and I think this proceeding should be dismissed.