REMSTER ET AL., ELECTION COMMISSIONERS, *v.*
SULLIVAN ET AL.

[No. 5,928.   Filed October 31, 1905.]

1.  ELECTIONS. — *Petitions.* — *School Commissioners.—Statutes.—*
Under §3904x *et seq.* Burns 1901, Acts 1899, p. 434, and the
amendatory act of 1903 (Acts 1903, p. 5) candidates for the
office of school commissioner can not be nominated by political
parties but must be designated by petition of not less than 300
householders of the municipality.   p. 392.

2.  SAME.—*City Comptroller.—City Board of Election Commis-
sioners.—Statutes.—*Under §3656 Burns 1905, Acts 1903, p. 5,
§1, it is the duty of the city comptroller to certify the nomina-
tions for school commissioners to the city board of election com-
missioners.   p. 394.

3.  SAME.—*Statutes.—Construction.—*Statutes affecting the right
of franchise should be liberally construed, but the provisions
thereof should be substantially complied with.   p. 396.

4.  SAME.—*Right of Franchise.—*Every voter in a republic has
the legal right to cast one ballot for the candidate of his choice,
provided such candidate's name is legally on the ballot.   p. 397.

5.  SAME.—*Nominations.—Designation of Office.—*Where nomina-
tions are by petition, such petition must state the office for
which such nomination is made.   p. 397.

6.  PLEADING. — *Complaint.* — *Injunction.* — *Elections.* — *Nomina-
tions.—Ballots.—*A complaint showing that defendant city
board of election commissioners is threatening to print upon
the official ballots the names of all of the candidates for school
commissioner without designating for what terms such candi-
dates are running is good, since it shows a violation of the re-
quirements of §3656 Burns 1905, Acts 1903, p. 5, §1.   p. 397.

7.  ELECTIONS.—*Statutes.—City Board of Election Commission-
ers.—*The city board of election commissioners is a creature of
statute whose duties are wholly ministerial.   p. 398.

8.  SAME.—*City Board of Election Commissioners.—Right to
Designate Offices for Nominees.—*The board of election commis-
sioners has no right to designate, on the official ballots, for what
terms nominees for school commissioners have been nominated,
where the nominating petitions have not designated for what
terms they are nominated.   p. 398.

9.  PLEADING.—*Answer.—Construction.—Elections.—Petitions for
Nominations.—*Where nominating petitions for school commis-
sioner fail to state what terms such nominees stand for, and

an answer shows that such nominees themselves decided for what terms they would stand, but such answer failed to show that such decision was made before forty days prior to the election, such answer is bad, being construed most strongly against the pleader.    p. 399.

10.    ELECTIONS. — *Petitions for Nominations. — Amendments.* — Petitions for nominations can be withdrawn and amended before the final day for filing but not afterwards.    p. 400.

11.    SAME.—*Certificates of Nominations.—Validity.—Rejection.*— Where the statute requires petitioners to designate in their petition for what office their nominee stands, and they fail to do so, the officer with whom the petition should be filed must reject it.    p. 401.

12.    SAME.—*Nominations.—Failure to Designate Offices.*—Where different offices are to be filled, or different terms for the same office, a failure to show for which office or term the vote is intended invalidates the ballot.    p. 403.

13.    SAME.—*Defective Petitions.—Defective Ballots.*—Legal ballots can be prepared only by a substantial compliance with the laws governing nominations, and when the certificate of nomination fails to state the office or term, where different terms are to be filled at the same election, a candidate so named and placed on the ballot is not entitled to be voted for, and a ballot cast for him is a nullity.    p. 403.

14.    APPEAL AND ERROR.—*Moot Questions.*—The Appellate Court will not decide moot questions.    p. 405.

From Superior Court of Marion County (70,075); *Vinson Carter,* Judge.

Suit by Patrick Sullivan and another against Charles Remster and others as the city board of election commissioners of the city of Indianapolis.    From a decree for plaintiffs, defendants appeal.    *Affirmed.*

*Jameson, Joss & Hay, Charles Remster, John H. Wilson* and *Howard Young,* for appellants.

*Joseph T. Markey* and *Hanna & Dailey,* for appellees.

WILEY, C. J.—The record in this cause was filed on October 25, 1905, and on the joint petition of the parties the cause was advanced.

In the court below a demurrer to appellees' complaint was overruled.    Appellants answered in two paragraphs,

to each of which a demurrer for want of facts was addressed and sustained. All of these rulings are assigned as errors.

In their complaint appellees aver that they are male citizens of the United States, and for more than five years last past have been legal residents of the city of Indianapolis and are legal householders therein; that the appellants are the election commissioners for the city of Indianapolis for the municipal election to be held November 7, 1905; that appellee Sullivan and more than three hundred other householders of Indianapolis, no one of whom has signed the petition of any other candidate for school commissioner to be elected at such election, signed and acknowledged before a notary public and delivered to Jacob P. Dunn, comptroller of said city, more than forty days before November 7, 1905, a petition in writing presenting the name, as a candidate for election as a member of the board of school commissioners of said city, of John H. Emrich, who is more than twenty-five years of age, a resident of the city of Indianapolis, and has been such for more than three years last past, and whom such petition named as a candidate for the term of office of school commissioner commencing January 1, 1908. It is further averred that appellee Deem and more than three hundred other householders of Indianapolis, no one of whom had signed a petition for any other candidate for school commissioner, signed and presented a petition to the comptroller, duly acknowledged, etc., similar in all respects to that above indicated, naming William M. Taylor as a candidate for said office, and aver facts showing his eligibility therefor, for the term commencing January 1, 1908; that more than forty days before November 7, 1905, similar petitions were filed, signed and acknowledged before a notary public by more than three hundred householders of said city, who had signed no petition for other candidates, and delivered to said comptroller, presenting the names of Charles W.

Moores, Henry C. Sickels and Andrew M. Sweeney as candidates for said office, designating said three persons as candidates for the term commencing January 1, 1906; that more than forty days before the date of the election petitions were filed by more than three hundred householders of said city, no one of whom had signed any other petition, presenting the names of Matthew H. Camden and William H. Leedy as candidates for said office for the term commencing January 1, 1906; that additional petitions were filed forty days before the day of the election by more than three hundred householders, no one of whom had signed similar petitions, presenting the names for said office of Amelia Keller Buehler, Julius A. Haag, Joseph H. Keller, Charles O. Lowry, Clarence L. Marlatt and Frank Morrison, but that no petition in behalf of any of said persons last named "indicates any term for which such persons so named are candidates." It is then alleged that appellees are informed and believe, and charge the fact to be, that all the persons in whose behalf petitions have been filed as candidates for school commissioners are eligible to said office; that no petition for the nomination of any candidate has been acknowledged before any notary public, or other officer authorized to take acknowledgments, saving and excepting only the petitions in behalf of John H. Emrich, William M. Taylor, Charles W. Moores, Henry C. Sickels and Andrew M. Sweeney; and that no petitions saving and excepting those of the five last-named candidates and Matthew H. Camden and William H. Leedy designate the term for which the candidate named shall be voted for at said election. It is further averred that appellants, as election commissioners, are proposing and threatening to place upon the official ballot to be printed by them and to be voted at such election the names of all of said candidates for whom petitions have been filed, notwithstanding the fact that but five of said candidates have been presented by petitions properly ac-

knowledged; that appellants are proposing to, and "unless restrained, will print an official ballot containing simply the names of such candidates as have been nominated for school commissioners, without designating upon such official ballots the terms for which such candidates have been respectively nominated;" that if such election commissioners should proceed it would involve the election and the election officers and board of canvassers in doubt and confusion, and render it- difficult to tell what candidates, if any, have been properly elected at such election, and would be productive of litigation, and might deprive the parties of the rights which they possess not only to nominate candidates for such office but to be assured that all other candidates for such office had been nominated in conformity with the provisions of the law; that the two candidates whose petitions appellees have signed, to wit, Emrich and Taylor, have no opposition at such election, and if the names of all candidates for school commissioners should be printed together upon the official ballot, without indication as to the terms for which said candidates have been nominated, in the event any other candidate should receive more votes than said Emrich and Taylor,- it is "probable that the board of canvassers of the city of Indianapolis would certify such other candidates as elected to the place for which said Emrich and Taylor were candidates, and that thereby lasting and irreparable damage would be done to the plaintiffs, and that plaintiffs have no adequate remedy at law for the redress of the grievances herein complained of, and that it is impossible to fix accurately in dollars and cents the damage plaintiffs are likely to sustain by reason of the wrongful and unlawful acts of the defendants herein, if suffered to continue; that no penalties whatever are provided by the law for the unlawful and wrongful acts of the defendants; and that injunctive relief is necessary to restrain the continued wrongful acts of the defendants, and unless the same is given it would be necessary

to resort to a multiplicity of suits in the future to determine the rights of the various candidates." The prayer of the complaint is that the appellants, constituting the board of election commissioners, be perpetually enjoined from printing upon the official ballots for school commissioners the names of any other candidates than the five persons, petitions for whose names were duly acknowledged, namely, Emrich, Taylor, Moores, Sickels and Sweeney, and that appellants be perpetually enjoined from printing upon said ballots the names of any candidates for school commissioners without designating upon the official ballot the term for which said candidate is named, whether it be for the term commencing January 1, 1906, or January 1, 1908.

The first paragraph of appellants' answer admits that petitions designating all of the thirteen names mentioned in the complaint were filed as alleged therein, but denies that appellants intend to and will, unless restrained, print an official ballot containing simply the names of such candidates as have been named for school commissioners, without designating upon such official ballots the terms for which said candidates have been respectively nominated; but, on the contrary, appellants aver and allege the fact to be that they intend to and will, if permitted, designate and have printed on the official ballot "the office and term of office for which each of said candidates will be voted for, and that said defendants intend to and will, unless restrained and enjoined from so doing, designate on said ballot and print thereon the name of Amelia Keller Buehler, Julius C. Haag, Joseph H. Keller, Charles O. Lowry, Clarence L. Marlatt and Frank Morrison as candidates to be voted for for school commissioners for the term commencing January 1, 1906.

In their second paragraph of answer appellants admit that the petitions of all of the thirteen persons named in the complaint, designating them, were filed as alleged in the complaint, but they deny that they intend to and will,

unless restrained, print the official ballot containing simply the names of such candidates without designating the terms for which said candidates have been respectively named; but, on the contrary, allege that since the filing of said petitions the candidates Buehler, Haag, Keller, Lowry, Marlatt and Morrison, by, and with the consent of each and all the petitioners, have elected and designated in writing, duly acknowledged, the term of office for which they intend, and intended at the time the petition was filed, to be candidates; and that appellants intend to and will, if not restrained, designate and print on the official ballot the office and the particular term of office for which each of said candidates will be voted for, to wit, Buehler, Haag, Keller, Lowry, Marlatt and Morrison for the term commencing January 1, 1906, "according to the choice so expressed by said candidates and their respective petitioners."

Upon the action of the court in sustaining the demurrer to the first and second paragraphs of their answer, appellants declined to plead further, and the cause was submitted to the court upon the complaint. Such proceedings were had that the court entered a decree perpetually enjoining the board of election commissioners from printing upon the official ballots for school commissioners any other names than those of Emrich, Taylor, Moores, Sickels, Sweeney, Camden and Leedy, and that "said defendants and each of them and their agents and employes be, and they are hereby, perpetually enjoined from printing upon said ballots the names of any candidate for school commissioner, without designating upon the official ballot, in connection with the name of such candidate, the term for which said candidate is named, and whether it be for the term commencing January 1, 1906, or for the term commencing January 1, 1908." The antagonistic positions upon which the contending parties base their rights are clearly manifest by the facts averred both in the complaint and answer.

The two basic propositions, advanced by appellees and

appellants, respectively, upon which all others must depend, are: (1) That the board of election commissioners has no authority to print upon the official ballots the name or names of any candidate or candidates whose petitions designating them as such do not specify the term for which they are to be elected, and where the petitioners have not acknowledged the execution of the petitions before some officer authorized to take acknowledgments. (2) That where the petitions show that the candidates are eligible to the office and are signed by the requisite number of legal petitioners, even though the petitions do not designate the term for which the nominations are made, it is the duty of the board to place such name or names on the official ballot, and also to designate thereon the term for which such candidates are to be voted.

From the decree entered by the trial court, it is likewise evident that it did not adopt the view in whole of either party, for it held that the only names of candidates that should go upon the official ballots were those whose petitions designated the term for which they would be elected, notwithstanding the petitions of two of the candidates, to wit, Camden and Leedy, were not acknowledged by the nominators. The trial court, therefore, in terms held that the acknowledgment by the petitioners was not requisite to the validity of the petition, but that to make the petition valid it was requisite that it should designate the term for which the candidate was to be voted.

The office of school commissioner, created by the act approved March 4, 1899 (Acts 1899, p. 434, §3904x *et seq.* Burns 1901), and the amendatory act approved January 29, 1903 (Acts 1903, p. 5), is the only elective office under the laws of this State which is not subject to the control of political parties, and candidates for which can not be nominated by political organizations. The act creating the office and providing the manner in which candidates therefor might be placed upon the

official ballot, has therefore wisely divorced the management and control of public schools in cities that come within the act from the intrigues and manipulations of all political parties. The only manner in which an elector can become a candidate for such office is by the petition of not less than three hundred householders of the municipality. When the act of 1899 and the amendatory act of 1903 were passed, the law provided for biennial elections in the city of Indianapolis, and such elections were not held in connection with the general elections for state and county offices. The apparent confusion which presents itself in this case upon the facts disclosed by the record has arisen by reason of the provisions of the act approved March 6, 1905, that elections for city offices in cities of the class of Indianapolis shall be held on the first Tuesday after the first Monday in November in the year 1905, and on the same day every four years thereafter. Acts 1905, p. 219, §43, §3467 Burns 1905.

Under section four of the act of 1899 (Acts 1899, p. 434, §3904x Burns 1901), the terms of three of the present school commissioners of the city of Indianapolis will expire on the 31st day of December, 1905, while the terms of the other two members will not expire until two years thereafter. By reason of the provisions of the act of 1905, *supra,* postponing the city election until the first Tuesday after the first Monday in November, 1905, and providing for elections every four years thereafter, it becomes necessary to elect at the election of 1905 five school commissioners instead of three. Seven of the petitions nominating candidates for this office have specified the terms for which such nominations have been made, while six of them do not specify any term. It is very earnestly contended by appellants that, notwithstanding the omission in the six respective petitions to designate the term for which the candidates are to be voted for, that it is within the power of the election commissioners of the city to designate upon the

ballots such terms, and which they aver in their answer they intended to do, and will do unless enjoined.

To determine the merits of the controversy it becomes important at the threshold of the case to look to the statutes which make provision for such nominations and elections. Section one of the amendatory act of 1903 (Acts 1903, p. 5, §3656 Burns 1905) is as follows: "The said board of school commissioners shall be elected, except as specified in section four of this act, on the general ticket for a term of four years, by the voters of such city qualified to vote at its city elections. The members of such board shall be elected at the regular city election of such civil city, and shall be taken from the city at large without reference to districts, and such election shall be held under the provisions of the general laws governing such city elections, so far as they are not inconsistent with the provisions of this act. * * * Not later than forty days before any election for members of the board of school commissioners, provided for in this act, householders of said city may present names of candidates for election as members of said board of school commissioners by filing the nominations in the office of the comptroller of said city in the manner following: Each candidate shall be proposed in writing by not fewer than three hundred householders of said city. No more than one candidate may be named in any one petition and no person may sign more than one petition for any one election. Upon the filing of such petitions in the office of the comptroller, as aforesaid, the comptroller shall place the same in the public files of his office and for five days, the last of which shall not be less than thirty days before the election, he shall publish the names proposed in two daily newspapers of the city, and at the time required by law shall certify such nominations to the regular board of election commissioners for said city election. * * * The election commissioners shall prepare ballots the color and quality of whose paper shall be

the same as that of the regular city ballots. The ballots so prepared shall contain the names of all such candidates arranged in alphabetical order in columns according to the following method: The names of candidates for each term shall be printed in a separate column, those for the regular term in the first column and those to fill vacancies in the second column, and such names shall be printed upon the ballots in rotation in such manner, as nearly as possible, that the name of each candidate shall appear at the head of the column for his term, whether the regular or the vacancy term, as often as that of any other such candidate shall so appear, and in the second place a like number of times, and so on. In printing the ballots, the positions of the several names shall be changed as many times as there are candidates to be voted for. In changing the positions, the printer shall take the name at the head of the column and put it at the foot, raising the remainder of the column so that the name that was second before the change shall be first after the change." It is further provided: "There shall be nothing on the face of said ballots except as otherwise provided herein and except the names of the candidates and the respective terms for which they are candidates, together with the square in front of each name and a statement at the head of each column of the number of candidates for that term for whom the elector may vote, and that the elector shall indicate his choice by marking a cross in the square opposite the name of each candidate for whom he votes, and not elsewhere." It becomes the duty, under the statute, for the comptroller to certify such nominations to the regular board of election commissioners for the city.

If it were not for the fact that five instead of three school commissioners are to be elected at the November election, 1905, no confusion could arise on account of the petitions for nominations not designating the term or terms for which the candidates are to stand. It is conceded by both

parties that if there were only three candidates to be elected, the terms of which would commence January 1, 1906, the petitions would not be void for a failure to designate the term. Section one of the act of 1903, *supra,* provides that the election of school commissioners "shall be held under the provisions of the general laws governing such city elections, so far as they are not inconsistent with the provisions of this act." Section twelve of the act approved March 4, 1905 (Acts 1905, p. 189, §6275f Burns 1905), entitled "An act concerning elections," provides: "No name upon any petition for nomination shall be considered by the city or county board of election commissioners unless the same be signed by the petitioner in person or by his mark duly attested, and no petition for nomination shall be effectual to authorize the name petitioned for to appear upon the official ballot unless the signatures of such petition to the number required by law shall be duly acknowledged before some officer authorized to take acknowledgments."

Statutes that affect the franchise rights of the electors should receive a reasonable and liberal construction, to the end that such rights should not be abridged; but

3. it is important, also, that all such statutory provisions should be substantially complied with, that the rights of the public as well as the rights of the individual elector should be preserved. It is the rule that an act regulating elections should not be extended by construction beyond the letter thereof, so as to deprive an elector of his right of suffrage, but courts should restrict the exceptions which exclude the ballot, where the spirit and intention of the law are not thereby violated. 10 Am. and Eng. Ency. Law (2d ed.), 589; *Kirk* v. *Rhoads* (1873), 46 Cal. 398; *Kellogg* v. *Hickman* (1888), 12 Colo. 256, 21 Pac. 325; *Druliner* v. *State* (1868), 29 Ind. 308; *Stanley* v. *Manly* (1871), 35 Ind. 275; *State, ex rel.,* v. *Phillips* (1885), 63 Tex. 390, 51 Am. Rep. 646.

It is the universally accepted doctrine in a republican form of government that an elector has a right to cast a free ballot and to cast it for the candidate of his
4. choice, provided the name of such candidate legally appears upon the official ballot. Here the only mode, as we have seen, of nominating candidates for the office of school commissioner, is by petition, signed by not less than three hundred householders and filed in the office of the comptroller of the city not less than forty days before the date of the election. As appears by the record, at least 3,600 householders indicated their choice of candidates by filing thirteen separate petitions, naming thirteen candidates for whom they desired to vote. If they have shown a substantial compliance with the provisions of the statute in making such nominations, they should not be denied the right to cast their votes for such candidates.

The nomination of any candidate for an office, whether it be by convention, petition or otherwise, neces-
5. sarily implies the naming of such candidate and the particular office for which he is nominated.

This suggestion brings us to the consideration of the first question presented by the assignment of errors, to wit, the sufficiency of the complaint. Among other
6. things, it is averred that appellants, constituting the board of election commissioners, "unless restrained, will print an official ballot containing simply the names of such candidates as have been nominated for school commissioners, without designating upon such official ballot the terms for which such candidates have been respectively nominated." If no other reason were shown, this averment is sufficient to entitle appellees to injunctive relief, and makes the complaint good. Six of the petitions do not designate the term of office for which the respective candidates are nominated, and, as school commissioners for two separate and distinct terms are to be elected at the November city election, such petitions are void for uncertainty.

True, these petitions name certain candidates and state that they are to be candidates for the office of school commissioner, yet they fail to specify the terms for which they are to serve, and unless it is within the power of the board of election commissioners to supply this essential requirement, and to designate for the petitioners and candidates the respective term or terms for which they are to be elected, the failure to designate such terms in the petition is fatal.

This brings us to the consideration of the sufficiency of the answers. The board of election commissioners of the city of Indianapolis is a creature of legislative enactment, and such board derives its power and authority from the statute. The city clerk is *ex officio* a member of such board, and he appoints the other two members upon the recommendation or nomination of the chairman of the two political parties casting the greatest number of votes. It is the duty of such board to prepare, have printed and distributed the ballots to be used in the election. Their duties are wholly ministerial. The statute confers upon the board some latitude in certain matters. §§6215-6220b Burns 1901, Acts 1889, p. 157, §§1, 20-22, 24, Acts 1897, p. 49, §2. But as the latitude therein given to the board has no application to the question involved we omit to set out the statute or to comment thereon.

It is urged upon behalf of appellants that the spirit and letter of the law is that the board can make such changes, subject to restrictions, in preparing and printing the ballot as to make it a legal ballot, and that as six of the petitions fail to designate the term or terms for which the candidates were nominated, the board is clothed with power to designate and place their names upon the ballots accordingly. It is also claimed that, as the statute does not require that the petition of nomination should designate the term, the candidates have the right, if exercised within a reasonable time, in any other effective way, and that the board would have the right to act upon

such election by the candidates, and print the ballots accordingly. The material substance of the first paragraph of answer is that appellants propose to, and will, unless restrained, place upon the ballots the names of the six candidates, whose petitions for nomination do not specify any term, for the term commencing January 1, 1906. The second paragraph is to the effect that, since the filing of the petitions, the six candidates therein named, by and with the consent of the petitioners, "have elected and designated in writing duly acknowledged, the term and the office for which they intend, and intended at the time the petition was filed, to be candidates," and that such board will, unless restrained, placed their names upon the official ballot for the term beginning January 1, 1906. It should be noted by these averments of answer that the six candidates elected to stand for the term commencing January 1, 1906, and that they did so with the consent of the petitioners. Under the first paragraph of answer it clearly appears that appellants intend to determine arbitrarily for themselves the term of office for which the six candidates should stand for election, without regard to the wishes of the candidates or the petitioners. If they have a right to do this, they have an equal right arbitrarily to say that three of the candidates shall stand for election for the term commencing January 1, 1906, and that the other three shall be elected for the term beginning January 1, 1908. We are clearly of the opinion that they possess no such authority, and hence the demurrer to that paragraph was properly sustained.

As above stated, the statute requires that such petitions must be filed not later than forty days before the election. The second paragraph of answer does not aver that 9. the election of the six candidates to stand for the term to begin January 1, 1906, was made within the forty days before the election. A pleading will always be construed most strongly against the pleader, and, as no

direct averment is made that the election of the candidates was within the forty days, it will be presumed that it was not so made.

We have no doubt but that a petition of this character could be withdrawn for amendment, after it had been filed, if it was done within the statutory period; but, being void in the first instance for uncertainty, it could not be legalized and be made effective by such amendment after the expiration of the statutory period. We think that the election of the six candidates named in the petitions to stand for the term beginning January 1, 1906, as indicated by the answer, must be regarded as a material and essential amendment to the petitions. After the expiration of the statutory period neither the petitioners nor the candidates could exercise any control or authority over the petitions thus filed. They became public documents, and were in the custody and control of an authorized statutory officer. In fixing and designating the time in which such petitions have to be filed, the legislature, no doubt, had in mind some useful purpose in the interest of the public. The comptroller, who is made the custodian of the petitions, and with whom they must be filed, is required to place "the same in the public files of his office and for five days, the last of which shall not be less than thirty days before the election, he shall publish the names proposed in two daily newspapers of the city," etc. This provision of the statute implies that in such publication he shall state not only the names of the candidates, but the offices for which they have been nominated. It is evident, therefore, that the purpose of the legislature in requiring these several specific things to be done was to give the electors of the city timely notice of the candidates for whom they might desire to vote and the specific office for which such candidates were to be elected. The mere naming of a candidate for the office of school commissioner, without designating the term for which he was to be elected,

where members of the board are to be elected for two separate and distinct terms at the same election, would not be naming such candidates for any specific office.

In our judgment there is no more warrant in law for doing what appellants are proposing to do, as indicated in their answer, than there would be in allowing and recognizing the right of any person who desires to be a candidate for a public office to file his petition of nomination after the expiration of the statutory period, and the election commissioners then placing his name upon the official ballot as a candidate. In such case all would agree that such person would have no legal standing as a candidate and acquired no right to be voted for. If the election commissioners can do what they propose in this case, it would be equivalent to an assumption of power on their part to place upon the ballot the name of a candidate who had not been designated as such in any mode known to the law.

The law provides for the election of three members of the board of commissioners for each county in the State. Suppose a political party, at a regularly called convention, should nominate three candidates for commissioners, without designating the districts they were to represent, and so certify such nominations as required by law. The board of election commissioners, when they come to prepare and print the ballots, would, in such case, have no authority to do what the convention omitted to do, and amend the nominations by designating the districts. After the expiration of the statutory period of forty days, the petitions for nominations, so far as the petitioners are concerned, become *functus officio,* for they have then discharged their functions and can not be amended.

It has been held that where a statute requires a certificate of nomination to designate the particular office for which the person named in the certificate was nominated, and it fails to do so, the officer with whom it is to be filed must reject it. *State, ex rel.,* v. *Falley* (1900),

9 N. Dak. 464, 83 N. W. 913. It was also held in that case that where the certificate was required to be filed thirty days before the election, and it was filed within that time, and had been withdrawn for correction and again filed twenty-nine days before the election, the officer had no authority to certify it. The court said: "The designation of the office is matter of substance, and not a mere formal matter. Unless the office be named, the secretary [secretary of state] can not certify the name to the county auditors, because its place upon the ticket could not be fixed." Quoting from *Lucas* v. *Ringsrud* (1892), 3 S. Dak. 355, 53 N. W. 426, it was said: "The first certificate of the nominations made by the prohibition party, as shown by the exhibit, is clearly insufficient, because it fails to give the residence or business address of any of the officers purported to be nominated, and it also fails to state the places of residence, the business, the business addresses of the presiding officer and secretary of the convention or primary meeting at which said nominations were made, and was therefore properly rejected. What the certificate of nomination shall contain is plainly stated in the statute, and any one who wishes to avail himself of the benefits of this law must substantially comply with its requirements. Until this is done, the secretary of state is justified in refusing to place such a document on file."

In *State, ex rel.,* v. *Falley, supra,* the court, continuing, said: "Under this decision, as well as under the express words of our statute, the certificate, when first presented, was clearly insufficient, and the secretary could not receive or file the same. When the amended certificate was presented, granting that it was, in law, presented when placed in the registered mail * * * it was too late." The statute of North Dakota provides that certificates of nominations must be filed with the secretary of state not less than thirty days before the date fixed by law for the "election of the persons in nomination," and in the case of

*State, ex rel.,* v. *Falley, supra,* it was said: "This time limit has been held mandatory by every court that has ever passed upon a similar statute, so far as we can ascertain." Citing *Lucas* v. *Ringsrud, supra; State, ex rel.,* v. *Piper* (1896), 50 Neb. 40, 69 N. W. 383; *Hallon* v. *Center* (1897), (Ky.), 43 S. W. 174; *In re Cuddeback* (1896), 39 N. Y. Supp. 388.

In *Howes* v. *Turner* (1876), 1 C. P. D. 670, it was held where a nomination paper was filed within the time allowed by law, and then taken away, without any intention of withdrawing it, to make an unnecessary amendment by getting one of the signers to write his Christian name in full, instead of the abbreviation, as it appeared upon the petition when filed, and then returning it to the files the day after the expiration of the time, would not invalidate it, but that a petition filed after the expiration of the time became a nullity.

Where there is more than one office to be filled, or different terms of the same office at the same election, a failure to designate for which office or term of office the vote is intended will invalidate the ballot. 10 Am. and Eng. Ency. Law (2d ed.), 725, 726; *Page* v. *Kuykendall* (1896), 161 Ill. 319, 43 N. E. 1114, 32 L. R. A. 656; *State, ex rel.,* v. *Griffey* (1876), 5 Neb. 161; *Milligan's Appeal* (1880), 96 Pa. St. 222; *Chamberlin* v. *Hartley* (1893), 152 Pa. St. 544, 25 Atl. 572; *State* v. *Goldthwaite* (1862), 16 Wis. 152.

It may be said, we think, as a general proposition, that under the Australian ballot system a legal ballot can only be prepared and printed when it is done in substantial compliance with a certificate or petition of nomination and the requirements of the statute governing such proceedings; and when the certificate or petition is defective in not designating the office to be filled or the term of office, where different terms of the same office are to be filled at the same election, a candidate thus named

and placed thereon is not entitled to be voted for, and a ballot cast for him is a nullity. This being true, there can not be in such case any legally designated candidate. These considerations lead us to the conclusion that the six persons named in the petition, where the terms for which they were to be voted were not designated therein, are not entitled to have their names appear upon the official ballot. We reach this conclusion without considering the question of the acknowledgment of the petitions by the petitioners.

We have thus disposed of every matter in dispute between the parties, except the one asserted by appellees, that it was an essential requirement to acknowledge, before some officer authorized to take acknowledgments, the execution of the petitions. We have held these six petitions invalid upon other grounds, and that appellants in their official capacity are not authorized to place the names of the persons therein specified as candidates upon the ballots. This holding is favorable to appellees, but against the contention of appellants, who assert that all of the thirteen names designated in the petitions are entitled to be placed upon the ballots.

Appellants are asking a reversal because they say that the trial court erred in holding that these six persons were not entitled to have their names appear on the ballots as candidates. We have clearly indicated in this opinion that we are in accord with the conclusion of the trial court upon that proposition. The decree below commanded the appellants to place upon the ballots the remaining seven names of the candidates petitioned for. To this command appellees yield obedience and are content, for they have not assigned cross-errors, and close their brief with the statement that: "The action of the lower court should in all things be sustained." It logically and necessarily follows that if it was a prerequisite to the validity of the petitions that the petitioners should have acknowledged the execution

of the same, that question has ceased to become a matter of controversy, and is therefore eliminated from the case.

The rights of the respective parties are adjudicated by what we have already said in this opinion. Courts of appeal will not give time to the examination or determination of questions which will serve no useful purpose, nor will they adjudicate questions unnecessary to the decision of the case. *State, ex rel.,* v. *Board, etc.* (1899), 153 Ind. 302; *Carmel Nat. Gas, etc., Co.* v. *Small* (1898), 150 Ind. 427.

We therefore decline to express an opinion as to the necessity of the acknowledgment of such petitions.

The judgment is affirmed, and the clerk of this court is hereby directed to certify this opinion to the court below forthwith.