THE PEOPLE, EX REL. TOM J. G. BOLT ET AL., V. DENNIS RIORDAN.

*Constitutional law—Municipal corporations—Board of supervisors —Power to change representation of city—Quo warranto.*

1. Act No. 415, Local Acts of 1887, in so far as it attempts to confer upon the common council of the city of Muskegon the power to increase its representation upon the board of supervisors at the discretion of the council, is in conflict with the provisions of sections 6 and 7 of Art. 10 of the Constitution.

2. The constitutionality of an act of the Legislature under which an office is created may be tested by *quo warranto* proceedings against the incumbent. *People v. Maynard,* 15 Mich. 463; *Attorney General v. Holihan,* 29 Id. 116; *Attorney General v. Amos,* 60 Id. 372.

3. It is not the intention of the Constitution to invest in cities the power to increase or diminish the number of members of the board of supervisors, such power being expressly vested in the Legislature.

*Quo warranto.* Argued January 10, 1889. Decided February 1, 1889.

Information in the nature of a *quo warranto* filed by the Attorney General to test the right of respondent to a seat on the board of supervisors of Muskegon county. Judgment of ouster entered. The facts are stated in the opinion.

*S. V. R. Trowbridge,* Attorney General (*Moses Taggart, L. W. Wolcott,* and *R. W. Butterfield,* of counsel), for relators.

*Chamberlain & Sessions* and *Smith, Nims, Hoyt & Erwin,* for respondent.

[The points of counsel are stated in the opinion.— REPORTER.]

LONG, J. This is an information filed by the Attorney General against the respondent for intruding into and usurping the office of supervisor of a pretended supervisor district in the city of Muskegon. At its session of 1887 the Legislature of this State passed an act entitled—

"An act to revise the charter of the city of Muskegon, and to define the boundaries of said city." Act No. 415, Local Acts of 1887.

By section 3, tit. 1, of said act, the city of Muskegon was divided into five wards, and there were given by said section to each of said wards two supervisor districts. Section 1, tit. 4, of said act, provides for the election of one supervisor in each supervisor district of said city, to be designated "supervisor district officers," and also for the election of two aldermen and one constable in each ward. Section 33, tit. 5, of the act, gives to such supervisors the same powers and authority as supervisors of townships, except as to the assessment of property and the spreading of taxes, and makes them members of the board of supervisors of Muskegon county. Section 28, tit. 6, of the act provides:

"Whenever the common council shall deem it expedient, it may, by ordinance enacted by a concurring vote of not less than two-thirds of the aldermen elect, redistrict said city into wards, divide or change the boundaries thereof, establish new wards, and increase the number of wards of said city, within the limits prescribed

by chapter 80 of Howell's Annotated Statutes, and establish, change, or define the boundaries of any supervisor district therein."

This act was ordered to take immediate effect, and was approved March 28, 1887. The limits prescribed by chapter 80, How. Stat., above referred to, are found in section 2413, which provides:

" Cities having a population of 3,000 inhabitants shall be divided into two wards, and an additional ward for every additional 2,000 inhabitants, up to 10,000 inhabitants, and from 10,000 inhabitants one ward for each additional 4,000 inhabitants."

The common council, acting under the provisions of section 28, tit. 6, of the act, on October 7, 1887, passed a resolution directing their committee on ordinances to prepare and present to the council an ordinance redistricting the city into wards, not exceeding 10 in number, defining the boundaries of such wards, and of the supervisor districts of each ward. On November 18 the committee reported to the common council that, as the number of wards in the city is conditional on the population, it was first necessary that a census be taken ; and they recommended that John T. Ryan be appointed to superintend the taking thereof, with power to appoint his assistants. This report was received and adopted, and on December 2, 1887, " An ordinance to provide for and regulate the taking of a census of the inhabitants of the city of Muskegon " was passed. The city was divided into seven enumeration districts, the census taken, and reported to the council, showing that the city on November 10, 1887, contained 20,228 inhabitants, according to the enumeration made as of that date. This report was made by the superintendent of the census to the common council on February 3, 1888, and the report adopted. The council, by a two-thirds majority of the

members elect, on February 21, 1888, passed an ordinance entitled—

"An ordinance to redistrict the city of Muskegon into wards and supervisor districts, to define their boundaries, and to provide for the election of officers of said wards and supervisor districts."

This ordinance prescribes the boundaries of the several wards, describing the territory embraced in each, and provides that each ward shall be divided into two supervisor districts, and prescribes the boundaries of the same. Section 3 of this ordinance provides:

"The aldermen of said city whose terms of office shall expire in the year 1889 shall from and after the city election to be held in April, 1888, represent the wards in which they live, to wit:

"Peter Damm shall be alderman for the First ward for the year following such election, and until his successor shall be elected and qualified.

"Bola Bergman shall be alderman for the Second ward for the year following such election, and until his successor shall be elected and qualified.

"John A. Miller shall be alderman for the Fifth ward for the year following such election, and until his successor shall be elected and qualified.

"Martin Waalkes shall be alderman for the Sixth ward for the year following such election, and until his successor shall be elected and qualified.

"George R. Sisson shall be alderman for the Seventh ward for the year following such election, and until his successor shall be elected and qualified.

"Sec. 4. At the election to be held in April, 1888, there shall be elected two aldermen in each of the Third and Fourth wards of said city, one for the term of two years, and one for the term of one year.

"Sec. 5. The common council shall make provision for the members of the board of registration, inspectors of election, and other officers rendered necessary by this ordinance.

"Sec. 6. The common council shall make provision for the re-registration of the voters of said city on the Saturday next preceding the first Monday of April, 1888."

It is conceded that these several ordinances passed by the common council were duly published as required by section 4, tit. 7, of the act, and affidavit of such publication filed in the office of the recorder of the city. This section provides:

"And such affidavit, when duly filed with the recorder, shall, in all cases and places, be conclusive evidence of the legal publication of such ordinance, resolution, or other proceeding."

This section further provides that—

"All ordinances and by-laws of the common council, printed and published by its authority, shall in all courts, places, and proceedings be received without further proof, as *prima facie* evidence thereof, and of their legal enactment and publication."

It appears that Dennis Riordan, the respondent, at said annual election held on April 2, 1888, received a majority of all the votes cast in supervisor district No. 11 of said city for supervisor of said supervisor district, and was within the term required by law declared elected to the office of supervisor of said supervisor district No. 11 in said city, by proper inspectors and officers of election; and in due .and proper time said respondent duly qualified as supervisor of said supervisor district No. 11, and now claims to hold said office, and pretends to exercise the functions thereof. This supervisor district No. 11 embraces all of ·the territory in the Sixth ward of said city lying north-westerly of Houston avenue.

This proceeding is by information in the nature of *quo warranto,* filed in this Court, and charges that—

"The respondent, for the space of one month and upwards last past, hath held, usurped, and intruded into, and claims to exercise, a false, fictitious, and ·pretended office of supervisor of supervisor district number 11, a supervisor district created by ordinance adopted by the common council of the city of Muskegon, and claims and pretends to be a member of the board of supervisors

of said county of Muskegon, and without any legal election, appointment, warrant, or authority whatsoever, from any legal ward or supervisor district of the said city; and that since the election held in April, 1888, said Dennis Riordan, claiming by virtue of said election, hath usurped and intruded into, and claims to exercise, and still doth usurp, intrude into, and unlawfully claims to hold and exercise said false, fictitious, and pretended office known as the office of supervisor of the pretended and illegal so-called supervisor district number 11, of said city of Muskegon," etc.

The information is filed by the Attorney General in the name of the people, on the relation of Tom J. G. Bolt, George Bolt, Charles E. Covell, Frank E. Thatcher, and James H. Whitney, supervisors of the county of Muskegon.

On October 9, 1888, the respondent pleaded to the information, and by his plea says that said Eleventh supervisor district was and is one of the legal subdivisions—that is to say, one of the supervisor districts—of the city of Muskegon, and hath ever since remained, and still is, such supervisor district; and that respondent by virtue of said election, and qualification at the time of said election, was and still is the supervisor of said Eleventh supervisor district of said city; and that said Eleventh supervisor district of said city is not represented, or pretended to be represented, by any other person or persons as supervisors, nor is any part thereof so represented, and this respondent is entitled to use and exercise all the rights, powers, and duties of a supervisor of said Eleventh supervisor district of said city; whereupon he prays judgment that the aforesaid rights and franchises in the manner aforesaid may be allowed and adjudged to him, etc., and of this he puts himself upon the country.

To this plea the Attorney General filed a replication, and alleges—

"1. That said Act No. 415, in so far as the same is legal and constitutional, does not authorize the common council of the city of Muskegon to either increase or diminish at will the representation of said city upon the board of supervisors of Muskegon county, and, if the reading of said act is susceptible of such construction, the same is unconstitutional.

"2. That said Act No. 415, nor chapter 80 of Howell's Annotated Statutes, to which reference is made, do not provide for the taking of any census by the common council of the city of Muskegon, and that any proceedings on the part of the city to take a census of its population as a basis of redistricting the city into wards and supervisor districts are without authority and void.

"3. That the proceedings taken by the common council to take the census of said city of Muskegon, and the assumed action of J. T. Ryan, the so-called 'census enumerator,' are irregular and insufficient, and did not authorize any proceedings on the part of the common council to redistrict the city into wards and supervisor districts, and such action on the part of the council is unauthorized and void.

"4. That the proceedings taken by said common council to redistrict said city into wards and supervisor districts are not authorized by said act, and are ineffectual and invalid.

"5. That notice of the several steps and proceedings to the adoption of the census ordinance, and to the redistricting of the city into wards and supervisor districts, were not given as required by law, if the law under which such action was attempted were valid.

"6. That said census enumerator, J. T. Ryan, did not properly qualify for the position, and did not make such report as authorized any action thereon by the common council of the city of Muskegon with reference to the redistricting of said city into wards and supervisor districts."

And so the said people say that said respondent was not properly elected as a supervisor of the city of Muskegon or of supervisor district No. 11 of the city of Muskegon, and that supervisor district No. 11 has no legal existence whatever, and the said respondent no

authority to act as supervisor from the city of Muskegon, and that he has usurped the office of supervisor, and the position of a member of the board of supervisors of the county of Muskegon; and that the action of said common council, creating supervisor district No. 11, and the position to which respondent pretends to have been elected, is void, and the said respondent assumed to act as supervisor without authority, etc.

Counsel for respondent contend that the people have not chosen the proper remedy for the determination of the questions involved, as it appears that the real purpose of the information is to inquire into the legal existence of the office, rather than the right of the respondent thereto, and to determine the validity of the action of the common council of the city of Muskegon in redistricting that city into wards and supervisor districts in accordance with the provision of the charter. It is further contended that the supervisor of the Eleventh supervisor district is not a city officer, and the city, not being made a party, can in no way be bound by an adjudication to which it is not a party; that the proper remedy to have adopted was to ask for a review by this Court of the proceedings of the common council in redistricting the city into wards and supervisor districts by *certiorari*, or to have instituted this proceeding by information against the corporation directly, and all of its officers; that in either of the above proceedings the whole question might have been determined, but in this proceeding it is an attempt to overthrow an entire city government by an attack upon an individual who is not even an officer of that city.

These objections are not aimed at the pleadings, though objections are made to them, which we shall discuss further on. Respondent's counsel cite several cases from this Court to sustain this position, but none of them

are in point.    The claim made by the people is that the
act under which the common council pretended to erect
the supervisor districts is unconstitutional and void, and
that there is no such office the functions of which the
respondent pretends to exercise.

In *People v. Maynard*, 15 Mich. 463, an information
was filed against respondent for "intruding into and
usurping the office of county treasurer" of Marquette
county, and this Court held the act of 1867 organizing
the county of Washington invalid, and gave judgment of
ouster against respondent.

In *Attorney General v. Holihan*, 29 Mich. 116, an infor-
mation was filed in the nature of *quo warranto* to test
respondent's right to hold the office of alderman of the
Tenth ward of the city of Detroit.    The purpose of this
proceeding was to question the constitutional validity of
an act entitled "An act to enlarge the corporate limits
of the city of Detroit, and to create an additional ward
in said city," approved April 12, 1873, and also "An act
to detach certain territory from the township of Ham-
tramck and Grosse Point, and to annex the same to the
city of Detroit."    These acts were declared invalid and
judgment of ouster entered.

In *Attorney General v. Amos*, 60 Mich. 372 (27 N. W.
Rep. 571), an information was filed in the nature of a
*quo warranto*, against the respondent, in which it was
alleged that the respondent usurps, intrudes into, and
claims to exercise a false, fictitious, and pretended office
known as the "office of alderman of the Sixteenth ward
of the city of Detroit."    It was claimed that the acts
organizing said ward were unconstitutional and void.
While it was held that the respondent was entitled to
hold the office, no question was made as to the propriety
of the proceedings by *quo warranto*.    These cases fully sus-
tain the claim made by the Attorney General, that the

proceedings by *quo warranto* are proper in this case.

A further contention is made by respondent's counsel that respondent is not called upon to show by what warrant he holds the office of a member of the board of supervisors; that the two offices of "supervisor of supervisor district number eleven" and "a member of the board of supervisors" are entirely distinct and separate. In this counsel for respondent are in error. The information expressly charges that he—

"Hath held, usurped, and intruded into, and claims to exercise a false, fictitious, and pretended office, known as the 'office of supervisor of supervisor district number eleven,' a supervisor district created by ordinance adopted by the common council of the city of Muskegon, and claims and pretends to be a member of the board of supervisors of said county of Muskegon, and without any legal election, appointment, warrant, or authority whatsoever, from any legal ward or supervisor district of the said city," etc.

This latter allegation in the information is not met by the plea, and it is undoubtedly true, if the plea had been demurred to for this reason, it would have been held bad, but we are bound judicially to notice the charter provisions.

The proceedings are not aimed at the intrusion into two separate and distinct offices, but the intrusion into the office of supervisor of the Eleventh supervisor district, and a claim that by virtue of his election to that office he is a member of the board of supervisors of the county. This claim is made under the provision of section 33, tit. 5, of the charter, which provides that "they shall be members of the board of supervisors of Muskegon county." We think the information sufficient, and the whole question before us, whether the respondent "hath usurped and intruded into and claims to exercise a false and fictitious office," etc., and whether he pretends to be

"a member of the board of supervisors without any legal election, appointment, warrant, or authority."

The people make some claim that the proceedings of the common council are irregular, and not in accordance with the provisions of the charter in several particulars. From the view we take of the case, we need not discuss those questions here, except in so far as they relate to the authority of the Legislature to delegate the power to the common council to redistrict the city into wards and supervisor districts. It is the contention of the people that Act No. 415, conferring power upon the common council of the city of Muskegon to divide and redistrict the city into wards and supervisor districts, is unconstitutional. The respondent contends that this authority is conferred by section 1, Art. 4, of the Constitution, which provides that all legislative powers shall be vested in the Senate and House of Representatives; and that by section 38, Art. 4, it is provided that—

"The Legislature may confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such powers, of a local, legislative, and administrative character, as they may deem proper."

In this claim counsel for respondent lose sight of other provisions of the Constitution. Section 6, Art. 10, provides for a board of supervisors consisting of one from each organized township. Section 7, Art. 10, provides:

"Cities shall have such representation in the board of supervisors of the counties in which they are situated as the Legislature may direct."

This proceeding is not only an inquiry into the authority of the common council to redistrict the city, and form new supervisor districts, but also to inquire into the authority of the council to increase, by its own action, its representation upon the board of supervisors

of the county. Under the provisions of the charter above quoted, the supervisors of the city of Muskegon are given the power of supervisors of the townships, except the assessing of property and the spreading of taxes. They are also made members of the board of supervisors of the county. As members of the board of supervisors they have important duties to perform. They pass upon claims against the county, fix the salaries of the county officers, equalize the assessment of taxes for the various townships and wards, and apportion the State and county taxes among the several townships and wards of the county. It is well known that contentions sometimes arise as to the portion of the public burdens cities should bear,—especially is this so in reference to the equalization of the assessment of the taxes; and it cannot be said that it was the intention of the framers of the Constitution to permit powers to be delegated to the cities to increase or diminish their representation upon the board of supervisors of the county at will. Under section 38, Art. 4, above quoted, the board of supervisors is regarded as capable of having conferred upon it certain legislative and administrative functions at the will of the Legislature, and certain of such powers are conferred by statute. It is not the intention of the Constitution to vest in cities the power to increase or diminish the number of members of this board. This power is expressly vested in the Legislature, and is not one of the powers it may delegate to cities, villages, or organized townships.

The contention that the authority of the common council to increase the number of wards and supervisor districts is limited by the Legislature by the provisions of section 2413, chap. 80, referred to in the charter, which provides that—

"Cities having a population of 3,000 inhabitants shall

be divided into two wards, and an additional ward for every additional two thousand inhabitants, up to 10,000 inhabitants, and from 10,000 inhabitants one ward for each additional 4,000 inhabitants,"—

Has no force in construing these provisions of the Constitution, or in determining the authority of the Legislature to delegate such powers to the common council to increase such representation. If the power may be granted within this limitation, the Legislature may grant it without reference to such limitation, and place the whole matter under the absolute control of the common council, to make as many members of the board of supervisors as it may deem best, without reference to population or the extent of territory embraced within the corporate limits.

Section 7, Art. 10, of the Constitution, provides:

" Cities shall have such representation in the board of supervisors of the counties in which they are situated as the Legislature may direct."

The Constitution having vested this authority in the Legislature, it in legal effect prohibited the exercise of such powers by any other body. No member of the Legislature in voting to delegate this discretionary power could know the representation upon the board of supervisors the city of Muskegon by its discretionary action would have. The determination of the number is the act of the common council, and not of the Legislature, and, if this act is upheld, it is the discretion of the common council, and not of the Legislature. When the Constitution has located the authority there it must remain.

In *Attorney General v. Preston,* 56 Mich. 177 (22 N. W. Rep. 261), a construction was given by this Court to Act No. 303, Local Acts of 1875, § 12. By this act the village of Mackinac was re-incorporated, and by the provisions of this charter the president of the village was made

*ex officio* member of the board of supervisors of the county. In that case it was said:

"The Legislature would have the power to establish a board of supervisors in each county of the State, with such representation therein from the several townships, villages, and cities constituting the county as it might deem proper. * * * * * * * *"

Referring to sections 6, 7, Art. 10, of the Constitution, it was said:

"The effect of the two sections as we construe them, is to limit the power to give organized townships more than one representative on the board, and imposes the duty of giving cities some representation therein, but leaving the number of representatives, and the manner of their selection, to the determination of the Legislature."

We must hold the act in question in conflict with the provisions of sections 6 and 7, Art. 10, of the Constitution, in so far as it attempts to confer upon the common council of the city of Muskegon the power to increase its representation upon the board of supervisors at their discretion. Such power may undoubtedly be exercised by the Legislature in its discretion, within any reasonable limits, but it cannot be delegated to cities.

It follows that judgment of ouster must be entered.

The other Justices concurred.