STATE ex rel., PRYOR, Respondent, v. AXNESS, Mayor, et al.,
Respondents.

(139 N. W. 791.)

1.   **Prohibition—Administrative Board.**

Under the statutes of this state, prohibition lies to restrain the action of an administrative board.

2.   **Holding of Election—Grounds—Other Remedies.**

Prohibition against the holding of an election will only lie where the correctness of relator's position is free from doubt, or where no adequate remedy would remain after election held; but where relator's contention is that failure to file petition for submission of question of establishing a municipal court, and that failure to call and record the aye and nay vote on the calling of a special election, were jurisdictional and rendered the election void, no rights of appellant could have been prejudiced by refusing prohibition, and relator would have adequate remedies at law, and the proceeding in prohibition should be dismissed.

3.   **Quo Warranto—Validity of Election—Election of Officer.**

The question whether a valid election was held, and whether a municipal officer was elected at such election, may be determined by quo warranto.

4.   **Court—Election to Establish Municipal Court—Filing of Petition.**

Under Sec. 3, Chap. 191, Laws 1907, concerning submission of question of establishing a municipal court to an election within 20 days from date of filing of a petition therefor, it is the presenting of petition for filing, not its actual filing, that confers authority for calling the election. **Held,** further that the petition must be considered filed when presented to city council.

5. **Officers—Powers of Administrative Board—Jurisdiction—Liberal Construction.**

When it appears from undisputed facts that an administrative board has acquired jurisdiction to act, courts should liberally construe its acts in carrying out its authority.

6. **Mandamus—Municipal Election—Statute.**

Laws 1907, Chap. 191, Sec. 3, makes it the absolute duty of the city council to submit the question whether a municipal court shall be established to a vote, and mandamus lies to enforce such duty.

7. **Municipal Corporations—Resolution for Election—Aye and Nay Vote.**

Political Code, Sec. 1209, requiring aye and nay vote upon propositions to create city liability, etc., pertains only to those matters involving discretionary power, not to matters that may be initiated and finally determined by the electors; hence it had no application to Chap. 191, Laws 1907, Secs. 3 and 4, authorizing establishment of municipal courts, and making it the absolute duty of city council on petition, to submit question of an election.

8. **Election—Establishment of Municipal Court—"Majority of Votes."**

Under Laws 1907, Chap. 191, authorizing establishment of a municipal court, at an election upon petition, and providing that if a majority of the votes cast at such election shall be favorable the court shall be established, **held,** that 168 votes in favor thereof out of 310 voting on that question was "a majority of the votes cast at such election'" for such establishment, notwithstanding said election, held on the date of a general election, brought out a total of 339 voting at the general election.

(Opinion filed February 10, 1913.)

Appeal from Circuit Court, Roberts County. Hon. FRANK McNULTY, Judge.

Application for writ of prohibition by the State on the relation of N. J. Pryor against O. T. Axness, as mayor, and others. From a judgment in favor of relator, defendants appeal. Reversed, with directions to dismiss.

*E. J. Turner,* and *Philo Hall,* for Appellant.

The writ of prohibition is not a proper remedy to reach an election board and the acts of the city council in ordering an election for the purpose of electing a municipal judge in and for said city at the annual city election held on the third Tuesday of April, 1911, was a ministerial and not a judicial act, and that the writ of prohibition can only arrest the act of an inferior tribunal and not an administrative board. 32 Cyc., 600; 32 Cyc., 402 Subd. 3; People v. Nussbaum, 68 N. Y. 89; Quimbo Appo v. People, 20 N. Y. 540; Thomas v. Mead, 36 Mo. 32; Washburn v. Phillips, 2 Metcalf, 296; Springvalley Waterworks Co. v. City of San Francisco et al., 52 Cal. 111; People v. Board of Election, 54 Cal. 405; Maurer v. Mitchell, 53 Cal. 289; Rickett v. Wallace et al., 57 Cal. 407; State v. MacKenzie, (N. D.) 86 N. W. 231.

Nor is the legislature authorized to change or extend this rule, and any attempt to do so is unconstitutional and void. Cameron v. Kenfield, 57 Cal. 550.

The plaintiff cannot maintain this proceeding for the reason that he has a plain, speedy and adequate remedy at law by an election contest or by certiorari. Baker v. Supervisors, 40 Ia. 226; Bennett v. Hetherington, 41 Ia. 142; State v. Ramsey (S. D.), 130 N. W. 768.

Under section 2 of chapter 191 of the laws of 1907, it is the duty of the mayor and city council to submit the question to an election to be held within twenty days after the date of the filing of the petition. It will be observed that no record is mentioned. It merely requires the act of the council to submit the question.

It is contended by the defendants that no formal record whatever is required in order to sustain the election. State v. Langlie (N. D.), 67 N. W. 958 and cases cited.

The proposition to establish said court received a "majority of all the votes at said election." Chapter 191, of the laws of 1907, provides for the election to be held within twenty days after the filing of a petition with the city auditor. It is a special election held at a different time than the annual city election. It is true that it may chance to be held on the same date, but the intent of the legislature and the thought in the mind of the drafter of the law was that it should be a special election when no other question should be submitted to the electors, hence the provision of the law reading "if a majority of the votes cast at such election shall be in

favor of the establishment of said court, etc.," carries no other or different thought than a majority rule, that is, a majority of the votes cast for or against the proposition of the establishment of the Court.

When any other rule than the majority rule is required by the legislature it is generally followed by some clear expression such as, "all of the electors or voters of the county, town, etc.," or requires the question to be submitted at a general election and then provides that it must receive a majority of all the votes cast at such election. This is the rule for establishment of county seats. (State Constitution, Art. 9, Sec. 2.) Adkins v. Lien, 10 S. D. 436; 15 Cyc. 390 and cases cited.

Where the question may be submitted at a general or special election, in the discretion of the Board, the rule is that a majority of the votes cast on that subject controls. Howland v. Board (Cal.), 41 Pac. 864.

And this is the rule fixed by the Supreme Court of this State in Treat v. DeJean, 22 S. D., 505.

As part of finding No. 6, the Court' held that the resolution adopted by the City Council on April 4, 1910, submitting the question of the establishment of a Municipal Court to an election to be held in said city, carried with it an expenditure of money on the part of said City of Sisseton and created a liability against the said city for the payment of a part of the salary of Municipal Judge, and in this connection we desire to submit that the same does not come under Section 1209 of the Pol. Code. That the fundamental object of said section is to prevent the city council from incurring a direct liability, unless it is concurred in by the "aye" and "nay" vote of the majority of the council, while in the submission of said proposition to a vote, the sole and only object of the same is to initiate an election wherein the people may decide as to whether or not they desire the court to be established and the liability incurred, in other words, the "aye" and "nay" vote, and the record is for the purpose of protecting the city against the unlawful acts of the members of the council and to fix the liability of the council for unlawful acts which they may do in their official capacity and not to protect the people against their own acts and their own liability incurred by their favorable expression upon a proposition submitted to them at an election.

*Geo. S. Rix,* and *Thomas Mani,* for Respondent.

That prohibition is the correct remedy is clearly in harmony with the holdings of this court in the following decisions: State v. Harris, 115 N. W. 533; State v. Barber, 19 S. D. 1.

The members of the council may have voted aye, but under the statute, which is mandatory, the aye and nay vote of councilmen must be entered in the minute book.

According to the facts proved, this was not done. This resolution must fall within the language of section 1209 of the Pol. Code.

The municipal law of 1907 provides that one-half of the salary be paid by the city.

Section 8 on page 401 of the laws of 1907 was amended by chapter 176 of the laws of 1911 and provides that the city shall pay one-half of the salary of the municipal judge. This creates a liability against the city and makes an expenditure of money necessary. 25 Ency. of Law (2nd Ed.) Pages 222-224, under the heading "Liable;" Vol. 1 Abbott's Municipal Corp., Sec. 152 on page 341.

It is well settled in this state that where the constitution or statute uses language similar to that of Sec. 4 of Chapter 191 of the Session Laws of 1907 that it requires a majority of the votes cast at the election. Williamson v. Aldrich, 21 S. D. 13; McCreary on Elections, 2nd Ed., Sec. 555; State ex rel Clark v. Stakke et al., 22 S. D. 228; McCreary on Elections, 2nd Ed., Sec. 183.

Again if it was the intention of the legislature to have taken the question of the adoption of this law by cities outside of the established rule, that it must have the majority cast at the election, it could and would have added words such as for this purpose or on this proposition. Then intention would have been certain. In the absence of any restriction it was the intention to let the vote fall within the rule of the majority of votes cast at the election.

It may be argued that because section 3 of chapter 19, providing for municipal courts, provides that this question may be submitted within twenty days from the date of the filing of the petition, that it becomes a special election, notwithstanding that it was held on a general election day. It will be admitted that the question was in this case actually submitted at the general election in

Sisseton, and if the council chose to submit it on a general election day, when other questions were being voted upon, this question should still receive a majority of the votes cast at such election. In this case notice that a vote would be had upon the question of adopting the municipal court law was given in the notice of the general annual municipal election.

While the legislature provides that the question of the adoption of the municipal law might be submitted on twenty days notice, and is silent as to whether it should be submitted on a special election or a general election day, it will be seen that the legislature made no distinction or exception to the language. "If a majority of the votes cast at said election shall be for the establishment of such court, such court shall then be deemed to be established."

It is also evident that no such distinction was necessary under the ruling of this court. If the question had been submitted at Sisseton on any other day than the annual municipal election day, and no other proposition had been submitted with it on a special election day, that the adoption of the municipal law would have been decided in the affirmative is certain. It should have received a majority of the votes cast, but when it is submitted with other propositions or on a general election day it must still receive a majority of votes cast at such election, and a majoritiy vote upon the proposition itself is insufficient. Adkins v. Lien, et al, 10 S. D. 436.

WHITING, J. At the regular municipal election held in and for the city of Sisseton in April, 1910, there was submitted the question of whether or not a municipal court should be established in said city. Upon the canvass of the votes cast, it was found and determined that a majority of the votes cast upon the above question were in favor of the establishment of such court. Such question was declared carried. If such question was carried, then, under the provisions of the statute, it became the duty of the city council of said city of Sisseton, in calling the regular municipal election to be held in and for said city in the month of April, 1911, to give notice that among the offices to be filled at such election was that of judge of such municipal court. The relator, alleging certain facts which he claimed rendered void the election upon the question of establishing a municipal court, and also that the question did not carry at such election, claimed that the defendants, who were the councilmen and auditor of said city, were threatening to

give notice of an election to fill the office of judge of such court, and obtained, from the circuit court, an alternative writ of prohibition, prohibiting defendants from giving notice of and calling such election.   After granting the alternative writ, and prior to the date for holding such election, the circuit court modified the writ allowing the election to proceed, and a certain party was chosen to fill the said office of municipal judge.   This cause was then, subsequent to such election, tried before the said court, which rendered findings and conclusions in favor of the relator. A judgment was entered making the alternative writ permanent, holding that the said office of municipal judge did not exist, holding that all proceedings had by defendants for the purpose of establishing said office and the said municipal court in said city were void, holding that no person had been legally elected thereto, and prohibiting the defendants from declaring any person elected to such pretended office.   The defendants appealed from the said judgment.

Under the statutes of this state, before a city council is authorized to submit to the electors of said city the question of the establishment of a municipal court, there must be presented to said council a petition, signed by a certain percentage of said electors, and asking for the submission of such question.   It appears that such a petition was presented to the city council of Sisseton; but no record was ever made by the city auditor of the filing in his office of any such petition or of the presenting of same to the council.   It further appears that, at the meeting at which the city council directed the giving of notice of the regular municipal election to be held in April, 1910, the city council passed a resolution submitting to the electors this question of the establishment of a municipal court in and for said city; but the record, as made by the city auditor, failed to record the fact that a yea and nay vote was taken thereon; but it was fully established that, as a matter of fact, a yea and nay vote was so taken, and that it was unanimous in favor of the calling of such election.   The statute provides that this question of the establishment of a municipal court shall be submitted to said electors at a special election.   As hereinbefore stated, the said question was submitted in connection with those matters which properly could be and were submitted at the general election in April, 1910, held for choosing the municipal officers in and for the said city of Sisseton.   From the canvass of the votes cast at said

election, while it appears that a clear majority of those voting upon the question of establishing such municipal court voted in favor thereof, yet the number voting in favor thereof was not a majority of all the electors voting at such municipal election.

It is the contention of respondent: (1) That the failure to file the petition was fatal; (2) that the question of establishing a municipal court was one which involved the expenditure of money, and that therefore, under the provisions of the statutes of this state, any action thereon was a nullity, unless an aye and nay vote was had thereon, and a record of such aye and nay vote made and entered; (3) that, under the provisions of the statutes of this state, it was necessary, in order for the question submitted to carry, that it should receive a majority vote of all of the electors who voted at the municipal election at which the question was submitted.

Appellants contend: (1) That prohibition does not lie in a case of this kind; (2) that, even if the circuit court had authority to issue a writ of prohibition in this case, it was, under the facts of this case, an abuse of discretion on the part of such court to issue such writ: (3) that the filing of the petition asking for the submission of the question of establishing a municipal court, is not jurisdictional, and that the council acquired authority, upon the presentation to it of a sufficient petition; (4) that the resolution calling such special election was not a resolution involving the expenditure of money, such as is contemplated by the statute requiring an aye and nay vote, and, even if it were such a resolution, that the statute was fully complied with by the calling of such an aye and nay vote, and that, if necessary, a record thereof could be made by the city council at a later date; (5) that the election for the determination of the question of establishing a municipal court was a special election, and remained such a special election regardless of the fact that it was held at the same time and place, and in connection with the general municipal election, and therefore, in order for the question submitted to carry, it was only necessary for there to be cast, in favor thereof, a majority of the votes of those electors who voted upon such question. The appellants contend that their act in ordering and calling the election for municipal judge was a ministerial and not a judicial act, and that the writ of prohibition can only issue to arrest the act of an inferior tribunal, and not the act of an administrative board.

[1] With this last contention, we are unable to agree. The law is well settled in this state that, under our statutes, prohibition will lie, in a proper case, to restrain the action of an administrative board.    State v. Harris, 22 S. D., 111, 115 N. W. 533; State v. Barber, 19 S. D. 1, 101 N. W. 1078.

[2, 3] Appellants further contend that a writ of prohibition should not issue to prevent the holding of an election, for the reason that there are other plain, speedy, and adequate remedies, and they cite the case of State v. Ramsey, 27 S. D., 302, 130 N. W. 768. Without determining whether, under some facts and circumstances, a court would be justified in prohibiting the holding of an election, we have no hesitancy in stating that it could only be where the correctness of the relator's position was free from doubt, or where no adequate remedy would remain after election held.    If, instead of waiting until the calling the 1911 election, respondent had, prior to the election when the question of establishing the municipal court was submitted, sought a writ of prohibition to prevent the holding of such special election, and had then urged that no proper petition had been presented to the city council, an entirely different situation would have faced the trial court, especially if such court believed, as is held in some jurisdictions, that a failure to question the sufficiency of a petition before election waives the right to question it after election.    But the contention of relator in this case—the correctness of which is absolutely essential to support the trial court's judgment—is that the failure to file petition and the failure to call and record the yea and nay vote were jurisdictional and rendered the special election absolutely void.    That being true, no rights of appellant could have been prejudiced by refusing the writ asked for.    After the election of April, 1911, he had adequate remedies by an action in the nature of quo warranto (State v. Tillma, 32 Neb. 789, 49 N. W. 806; People v. Riordan, 73 Mich. 508; 41 N. W. 482), if not by an election contest under article 13 of chapter 19, pol. code, or by a writ of prohibition. In fact, the learned trial court virtually recognized its error in granting the alternative writ when it modified it so as to allow the election to be held. One can readily see what great and irreparable injury might result from a wrongful issuance of an alternative writ, preventing the holding of an election.

[4]    The trial court should have dismissed this special pro-

ceeding at the time it granted the modification of the alternative writ; but, instead of so doing, it waited until after election and then tried out the issues of law and fact, upon which rest the validity and result of the special election. Though, for the reasons hereinbefore stated, the judgment of the trial court must be reversed, and such court ordered to dismiss the special proceeding brought, yet, as such a dismissal would leave undetermined the question of whether the city of Sisseton has a municipal court, we deem it our duty to determine this question, which is of so much public moment to the people of such city.

Sections 3 and 4 of chapter 191, laws of 1907, being the law authorizing the establishment of municipal court, read as follows:

"Sec. 3. Question submitted. Whenever of the legal voters of any city * * * a number equal to ten per centum of the number of votes cast for mayor at the last previous municipal election at which a mayor was elected in such city shall petition the mayor and council thereof to submit the question whether such court shall be established to a vote of the electors of such city, it shall be the duty of such mayor and council or other governing body to submit such question accordingly to an election held within twenty days from the date of the filing of such petition with the auditor of such city, and to appoint a time and place at which such vote may be taken, and to designate the persons who shall act as judges at such election, but such question shall not be submitted oftener than once in any calendar year.

"Sec. 4. Elections—How Held. Excepting as herein provided such election shall be held in the manner provided by law for holding municipal elections in cities of the class to which such city may belong. The mayor of such city shall give at least ten days' notice of such election, by publishing a notice thereof in the official newspaper of such city. The ballots to be used at such election shall be in the following form: 'For establishment of a municipal court,' or 'Against establishment of a municipal court.' The judges of such election shall make returns thereof to the city council or other governing body, whose duty it shall be to canvass such returns and cause the result of such canvass to be entered upon the records of such city. If a majority of the votes cast at such election shall be for the establishment of such court, such court shall thenceforth be

deemed to be established under this act as soon as a judge thereof shall have been elected and shall have qualified."

The statute contemplates that there shall be a written petition presented and filed; but it is the presenting of the petition for filing and consideration, and not the actual filing, that gives to the council the authority to call an election. Moreover, the petition must be considered as filed when it was presented to such council for its action thereon.

[5] When it appears from the undisputed facts that an administrative board has acquired jurisdiction to do an act, the courts should liberally construe the acts of such board in carrying out such authority.

[6, 7] It will be seen that the above sections do not require the calling of an aye and nay vote upon the resolution submitting the question; in fact, under section 3, upon the presentation of such petition, it became the absolute duty of the council—enforceable by mandamus, if necessary—to submit the question to the vote of the electors. Certainly, where a board could be compelled to do a thing even if it had recorded a unanimous vote against the doing thereof, it does not require that the ayes and nays be recorded in order to make their vote in favor thereof legal. It is not such matters that are contemplated by section 1209 of the Political Code of this state which requires the yea and nay vote to be recorded upon "any and all propositions to create any liability against the city, or for the expenditure or appropriation of its money." This statute pertains to those matters only wherein the council may have a discretinary power, not to matters which are not only initiated by the electors themselves, but finally determined by such electors, and over which the council, as such, has no discretionary power whatsoever. Where the danger, against which a law is designed, does not and cannot exist, the law can have no application.

[8] Was "a majority of the votes cast at such election * * * * for the establishment of such court"? The total number of voters voting at the general municipal election was 339; but the total number of votes cast upon the question of establishing a municipal court was but 310, of which 168 were in favor thereof. It will be noted that the statute does not require that this special election be held at the time and place of any general election, as is required in the case of the submission of certain other questions.

There is some reason for holding that, when a statute requires a question to be submitted at a general election held for the election of public officers, it so provides in order that it may be submitted under circumstances calling out a full vote, and thus indicates an intention that the total number voting on any and all matters shall be the basis taken in determining whether a question has received, in favor thereof, a majority "of all votes cast at such election." This forms the basis for the rule supported by some authorities that: "When a question is referred to a vote of the people, to be decided by a majority of the legal voters at a general election, the requirement calls for the requisite majority of those who vote on any ticket, nomination, or question at that election, and not merely a majority of those who vote on the particular question presented." 15 Cyc. 390. But, even under such statutes, there are numerous authorities holding that the total vote cast upon the particular question controls. Armour Bros., etc., v. Finney County Com'rs (C. C.) 41 Fed. 322; Board, etc., v. Winkley, 29 Kan. 36; Gillespie v. Palmer, 20 Wis. 544; Sanford v. Prentice, et al., 28 Wis. 358. But the rule stated in Cyc. cannot possibly obtain where the statute, as in this case, does not direct the special election to be held at the same time and place as a general election. In enacting such a statute, it is clear that it was the intent of the lawmakers that only those voting upon the question submitted should be considered in determining whether a majority of the votes cast at the election was in favor of such question; and no different result can be brought about by either the innocent or willful calling of the special election to be held at the same time and place as the general election.

A city council might be opposed to a question which they were compelled by law to submit to a vote of the electors. It might be a question that would not arouse much public interest, but which the council believed would receive a majority of those who would come out to an election called solely upon such question. Shall it lie in the power of such council, where the statute does not require this election to be held at the same time and place of, and as a part of, the general election, to make it a part thereof, and, by so doing, perhaps defeat the question by recording against it those who refrain from voting thereon? The Constitution of the state of Kentucky provides that no county could become indebted in excess

of a certain amount in any one year, "without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose." The Constitution makes no reference to a "general election." A question of incurring indebtedness was submitted at a general election and received a two-thirds vote of those electors who voted on such question, but not a two-thirds vote of those voting for candidates at the general election.

In passing upon this situation, the Supreme Court of that state, in Montgomery County, etc., v. Trimble, 104 Ky. 629, 47 S. W. 773, 42 L. R. A., 739, held that, even, "if it (the Constitution) had said, 'Without the assent of two-thirds of the voters thereof' voting at an election, we would be of the opinion that, when the word 'election' was used, it referred to the proposition upon which the vote was to be taken." This court also said in the same case: "The consensus of judicial opinion is that, when an election is held at which a subject matter is to be determined by a majority of the voters entitled to cast ballots thereat, those absenting themselves, and those who, being present, abstain from voting, are considered as acquiescing in the result declared by a majority (here two-thirds) of those actually voting, even though, in point of fact, but a minority of those entitled to vote really do vote. The fact that the election was held for the purpose of obtaining the necessary assent of two-thirds of the voters to the proposition, on the day of the general election, to fill offices does not change the rule of interpretation, nor, if so required to be held does it show a purpose to require the assent of twothirds of those who vote for officers and on other questions at the election. To so interpret the language used is to disregard its plain import and the current of judicial decisions in this country." See, also, State v. Barnes, 3 N. D. 319, 55 N. W. 883; Holcomb v. Davis, 56 Ill. 414; State v. Echols, et al., 41 Kan. 1, 20 Pac. 523.

The judgment of the trial court is reversed, and it is directed to dismiss the peremptory writ and the proceeding in which it was issued.