STATE of Missouri ex inf. Brendan RYAN, Circuit Attorney of the City of St. Louis, ex rel. Donald T. Cross and Harold M. Light, Relators-Appellants,

v.

Anita L. BOND et al., Respondents.

No. 59328.

Supreme Court of Missouri, en banc.

Dec. 30, 1976.

Rehearing Denied Feb. 14, 1977.

Elbert A. Walton, Jr., St. Louis, for relators-appellants.

Frankie M. Freeman, St. Louis, Mo., for respondents.

FINCH, Judge.

This is an appeal from the action of the trial court in dismissing an information in the nature of quo warranto on the basis that Donald T. Cross and Harold M. Light, at whose relation the information was filed by the circuit attorney for the City of St. Louis, did not have such special or peculiar interest in the matter to give them standing to maintain the action. We have exclusive appellate jurisdiction on the basis that title of respondents to an "office under this state" is involved. Mo.Const. art. V, § 3; *State ex inf. Mitchell ex rel. Goodman v. Heath,* 345 Mo. 226, 132 S.W.2d 1001 (1939); *State ex rel. Donald v. Leonard,* 480 S.W.2d 71 (Mo.App.1972). We reverse and remand.

On June 23, 1975, the information herein was filed by Brendan Ryan, Circuit Attorney of the City of St. Louis, at the relation of relators Cross and Light who, according to the information, had been qualified candidates for election to the Board of Education of the City of St. Louis at an election held April 1, 1975, and received votes in that election. The information additionally alleged:

(1) That for the name of a person to be placed on the ballot as a candidate for the school board at the election scheduled for April 1, 1975, such person was required to file with the Board of Education nominating petitions containing valid signatures of at least 2695 registered voters of the City of St. Louis;

(2) that relators timely presented to the Board of Education nominating petitions containing valid signatures of more than the required 2695 registered voters;

(3) that Anita L. Bond, Joyce Bowen, Lawrence Moser, and Erma J. Lawrence, respondents, all filed petitions purporting to contain valid signatures of more than 2695 registered voters of the City of St. Louis;

(4) that it was the responsibility of the Board of Education to determine the validity of nominating petitions filed and to certify whether prospective candidates had fulfilled the qualifications for candidacy by obtaining the requisite number of valid signatures;

(5) that the Board of Education, acting through Dr. Sam Lawson, its treasurer, em-

ployed an accounting firm to conduct a study to determine the number of valid signatures of registered voters on all of said nominating petitions;

(6) that the accounting firm, after conducting an investigation, reported to Dr. Lawson and to the Board of Education that Gordon Benson, Anna Forder, Geraldine Thurman and relators Cross and Light were the only potential candidates who had submitted nominating petitions containing the required 2695 valid signatures, and that the petitions of respondents were fraudulent, containing forged signatures and perjured attestations;

(7) that members of the Board of Education, in violation of § 610.015, RSMo Supp. 1973, held an unscheduled secret meeting to review the findings of the accounting firm and that the Board, in spite of their knowledge that respondents did not have sufficient valid signatures of registered voters on their nominating petitions, certified respondents as candidates for the school board;

(8) that no minutes of said meeting were made and Dr. Lawson and the members of the school board, keeping secret the findings by the accountants as to the respondents' nominating petitions, misrepresented to the public and to relators that respondents were eligible when, in fact, they were ineligible;

(9) that relators relied to their detriment on the misrepresentations by the school board;

(10) that respondents, although ineligible, appeared on the ballot at the April 1, 1975, election and since April 18, 1975, each of respondents have usurped, held and exercised the office of member of the school board.

In response to the information filed, the respondents filed a motion to dismiss which asserted several grounds as a basis for dismissing the action. The trial court sustained the motion on the basis that relators Cross and Light lacked standing to maintain the action, remarking that said relators did not possess an interest peculiar and special to them as distinguished from that of the general public. The court cited *State ex rel. Pickett v. Cairns,* 305 Mo. 333, 265 S.W. 527 (banc 1924) and *State ex inf. Wallach ex rel. Missouri Optimetric Ass'n v. Schneider's Credit Jewelers,* 243 S.W.2d 125 (Mo.App.1951).

Subsequent to the dismissal of this case by the trial court, this court decided *State ex inf. Graham ex rel. Bishop v. Hurley,* 540 S.W.2d 20 (Mo. banc 1976), which reviewed earlier cases on standing and held that the taxpayer at whose relation that action was maintained had standing. We conclude that under the decision in *Hurley* relators Cross and Light did have standing. Consequently, the dismissal of the case for lack of standing of relators cannot be sustained.

Before concluding to reverse and remand for trial, we should consider the question, raised during oral argument, that an election contest rather than this quo warranto proceeding would have been the appropriate and exclusive remedy which relators should have pursued. The nature of these two remedies was discussed at length in *State ex rel. Ponath v. Hamilton,* 240 S.W. 445 (Mo. banc 1922). Particularly appropo to the question raised during oral argument is what the court said at 448 449:

"There is no question but that quo warranto is the proper common-law proceeding to determine the right to an office. The relief that may thereby be obtained is, however, inadequate, in that the proceeding terminates with the ouster of the incumbent but does not seat the contestant. This, from the very nature of the proceeding which deals mainly with the right of the incumbent to hold the office independently of who shall fill it. It being a matter of public interest that official positions be not usurped, an action of this character is usually brought in the name of or on behalf of the public.

"The inadequacy of the remedy as existing at common law, so far as it affects the rights of an individual who may claim the office, probably led to the enactment of statutes providing for the contest of

elections. While these two remedies have one purpose in common, to determine if there has been a usurpation, it does not follow therefrom that the right of quo warranto within the limitations stated is impaired by the enactment of contest statutes. The two remedies are distinct. The first may be invoked by the people in their sovereign capacity under the common law; the second, by a voter in his individual capacity under the statute. The one simply determines a matter of public interest; the other, the private rights of two persons to the same office. In the absence of an express statute to the contrary, it need not be held that these remedies are otherwise than cumulative within their well-defined purposes. In other words, the people, through their proper representative, may, in the interest of good government and the orderly conduct of affairs, determine by quo warranto whether a public official is clothed with authority as such, and, if not, to oust him. But if an individual seeks to effect such ouster for his own private ends, namely, to succeed the incumbent in the office, he should, where the law has made provision therefor, institute a contest proceeding. This, that litigation may be limited in that all the issues involved may be determined in one . action."

■ This action is not one which seeks to have relators Cross and Light declared members of the school board. It raises only the question of whether respondents have unlawfully assumed and usurped positions on the school board. Quo warranto is appropriate for that purpose. As stated in *Ponath,* in the absence of a statute expressly providing otherwise, the remedies of quo warranto and election contest both exist and are cumulative.

■ Nor is it true, as respondents assert, that § 111.401 [1] provided an exclusive remedy applicable to the issues presented of whether respondents had filed nominating petitions which entitled them to be on the ballot and subsequently to serve as members of the school board. Sec. 111.401 establishes a procedure to correct errors or omissions in the printing of ballots or in the publication of the names or descriptions of candidates nominated for office when such errors or omissions are established by affidavit. It does not cover or apply to the situation presented in this case.

Having decided that this case is to be reversed and remanded for trial, it is appropriate and desirable that we consider three other grounds asserted by respondents in their motion to dismiss (and briefed on appeal) as a basis for dismissal of the information herein as they are likely to arise again on remand.

■ The first of these contentions is that §§ 120.180 through 120.220 are inapplicable to nominations for the office of member of the Board of Education of the City of St. Louis. Respondents do not develop this proposition in their brief and it is not clear which sections they say are applicable. In any event it is clear that §§ 120.180 through 120.220 are applicable. Sec. 120.150, as amended (Laws 1971), expressly provides "that candidates for the office of member of the board of education in school districts in cities having seven hundred thousand inhabitants or more shall be nominated in accordance with the provisions of sections 120.180 through 120.220 as amended, both inclusive, any provision hereof to the contrary notwithstanding." Accordingly, we hold that §§ 120.180 through 120.220 were applicable to and governed the nomination of candidates for the school board election held in the City of St. Louis in 1975.[2]

---

1. All statutory references are to RSMo 1969 unless stated otherwise.

2. The same conclusion is indicated by other statutory provisions which relate to this subject. Sec. 162.581.1, which prescribes qualifications for members of boards of education in metropolitan school districts, states that such

members "shall be elected from the city at large on a general ticket". Sec. 162.601 then provides that "all elections for members of the board of education shall be subject to and governed by the same laws, rules and regulations which govern elections in the city for municipal officers." Municipal elections for the City of St. Louis are governed by §§ 122.650 through

While § 120.220 states only that "petitions of nomination for the nomination of candidates for offices in * * * other political subdivisions shall be filed with the clerk or other proper officer or board of the political subdivision," it is obvious that someone was to process those petitions and in the absence of some provision to the contrary, it follows that the board of education was to process and verify the petitions as a condition to certifying the proposed nominee specified therein as a candidate for election to the school board. However, the school board's determination thereof would not be insulated from judicial inquiry, particularly where, as here, allegations of concealment and fraud were made. We overrule respondents' contention that the determination by the board to certify the respondents as candidates was final and conclusive.

■ Respondents' next argument for dismissal of the information was that § 120.-190, if applicable, required a specified number of "qualified voters" and that this term was not the same as and could not be construed to mean "registered voters". Respondents base this argument on Mo.Const. art. VIII, § 2. A similar contention was considered in *State ex rel. Soc. Wkrs. Party of Mo. v. Kirkpatrick,* 513 S.W.2d 346 (Mo. banc 1974), wherein it was held that a "qualified voter" as that term is used in the foregoing constitutional provision "is one that, in addition to other qualifications, must be registered where such is required as a condition for voting." *Id.* at 348. Consequently, we hold that it was necessary that the nominating petitions in this case contain the requisite number of signatures of registered voters.

■ Finally, respondents asserted that the defense of laches is available in quo warranto proceedings and should be applied to deny recovery in this case for the reason that relators knew of allegations of deficiencies in the nominating petitions for some time before the election but took no action nor made any complaint until after they were defeated in the election. The doctrine of laches has been held to be available in a quo warranto proceeding. *State ex inf. Otto ex rel. Harrington v. School District of Lathrop,* 314 Mo. 315, 284 S.W. 135 (banc 1926). However, it was applied in that case only after the case was tried, the court concluding that the evidence established that laches constituted a defense. In this case there has been no trial. Respondents filed a motion to dismiss for failure to state a claim. They added as an additional basis for dismissal allegations asserting a defense of laches. Those allegations did not prove themselves and the motion to dismiss should not have been sustained thereon. Whether respondents are entitled to relief on the basis of laches depends on the evidence when this case is tried.

Reversed and remanded.

All concur.

---

122.970 but § 122.680 specifically excepts therefrom members of boards of education. Sections 120.180 through 120.220 relate to nomination of independent candidates (those not candidates of any political party) for any office to be filled by the voters of the state, district or other political subdivision as appropriate. It follows by deductive reasoning that §§ 120.180 through 120.220 were applicable. We note that this conclusion was reached by the Attorney General in an opinion in 1968. Op.Atty.Gen. No. 213, Godfrey, 3–28–68.

It should be noted that in 1976 the legislature enacted a statute changing the number of signatures required on a nominating petition and providing for the filing thereof with the board of election commissioners of the City of St. Louis and the processing of such petitions by the board of election commissioners. Hence, the procedure followed in 1975 is no longer applicable. Sec. 162.603 (1976 Mo.Leg.Serv. No. 2, Act 43).