Robert V. BURNS, Plaintiff
and Appellant,

v.

Aelred KURTENBACH and Marvin
Scholten, Defendants and
Appellees.

No. 13896.

Supreme Court of South Dakota.

Argued Oct. 13, 1982.

Decided Dec. 21, 1982.

Robert Fite of Stanton & Fite, Brookings,
for plaintiff and appellant.

George S. Mickelson of McCann, Martin & Mickelson, P.C., Brookings, for defendants and appellees.

WOLLMAN, Justice.

This is an original action in the nature of a quo warranto proceeding. We conclude that a judgment should be entered removing the defendants from their positions as school board members of the Brookings School District 5–1 and declaring that the plaintiff is entitled to be seated as school board member of that district.

Prior to the May 14, 1982, deadline, plaintiff, Burns, and defendants, Kurtenbach and Scholten, as well as another individual, filed their nominating petitions for school board member with the business manager of Brookings School District 5–1. The school board election was scheduled for June 15, 1982. Burns was the only candidate who signed the circulator's verification as required by SDCL 13–7–6. The other candidates relied on the advice of the business manager, who informed them that the circulator's verification need not be signed if the nominating petition had been circulated by a candidate or a member of his family.

The business manager died on May 17, 1982. Burns became aware that the other candidates had not executed the circulator's verifications. Pursuant to the advice of the school district's attorney, the other candidates executed the circulator's verifications and backdated them to the date when each had originally submitted his petition to the school district's business manager.

Burns commenced an action in circuit court challenging the validity of the other candidates' nominating petitions. The circuit court refused to invalidate the petitions. On June 15, 1982, Kurtenbach and Scholten were elected to fill the two vacancies on the school board. Over Burns' objections, the oath of office was administered to Kurtenbach and Scholten.

Kurtenbach and Scholten contend that this court does not have original jurisdiction in quo warranto in a case such as this. We disagree.

Article V, Section 5, of the South Dakota Constitution, which was amended in 1972, provides:

The Supreme Court shall have such appellate jurisdiction as may be provided by the legislature, and the Supreme Court or any justice thereof may issue any original or remedial writ which shall then be heard and determined by that court.

. . . . .

The circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the legislature. . . .

Prior to the 1972 amendment, Article V, Sections 2 and 3 provided:

§ 2. The Supreme Court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law.

§ 3. The Supreme Court and the judges thereof shall have power to issue writs of habeas corpus. The Supreme Court shall also have power to issue writs of mandamus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same in such cases and under such regulations as may be prescribed by law: provided, however, that no jury trials shall be allowed in said Supreme Court, but in proper cases questions of fact may be sent by said court to a circuit court for trial before a jury.

SDCL 15–25–1, which apparently was not amended subsequent to 1972, provides:

The exercise of the original jurisdiction granted the Supreme Court by sections 2 and 3, article V of the Constitution, is reserved for the consideration of matters of prerogative, extraordinary, and general concern.

■ Although the 1972 amendment deleted language specifying the types of cases over which the Supreme Court may exercise

jurisdiction, we construe the amendment as in no way limiting the powers granted by the prior provisions with regard to the original jurisdiction of this court. In addition, we have held that quo warranto is the proper proceeding to determine title to and possession of a public office.[1] *State ex rel. Pryor v. Axness,* 31 S.D. 125, 139 N.W. 791 (1913); *State ex rel. Walklin v. Shanks,* 25 S.D. 55, 125 N.W. 122 (1910); SDCL 21–28.

Defendants contend that the election contest statutes of SDCL ch. 12–22 provide an alternative remedy that precludes relief by way of quo warranto. We disagree. The remedies of quo warranto and election contest are cumulative, and therefore the existence of the latter does not preclude relief under quo warranto proceedings. *Hurley v. Coursey,* 64 S.D. 131, 265 N.W. 4 (1936); see generally *Warren v. Brown,* 57 S.D. 528, 234 N.W. 38 (1930); see also *State Ex Inf. Ryan v. Bond,* 546 S.W.2d 1 (Mo.1977); *Williams v. Cates,* 235 Ga. 651, 221 S.E.2d 422 (1975).

Turning to the merits of the proceeding, Burns contends that Kurtenbach and Scholten are ineligible to serve as board members because their nominating petitions failed to contain an executed circulator's verification prior to the statutory filing deadline. SDCL 13–7–6 provides:

No candidate for elective school board membership may be nominated unless he is a resident voter of the school district and unless a nominating petition has been filed on his behalf with the business manager of the school district no earlier than the third Monday in April and no later than the second Friday in May at five p.m. prior to the date of the election. . . . *The petition shall be verified under oath by the person circulating the same.* The filing of the nominating petition shall constitute nomination and will entitle the candidate to have his name placed on the ballot for the term he desires only upon

verification signed by the business manager that the nominating petition contains the minimum number of signatures and that the candidate is a *resident voter.* (Emphasis added).

We conclude that the statute clearly and unambiguously requires that the circulator's verification be executed prior to the filing deadline. When a nominating statute plainly states its requirements, those wishing to benefit from the statute must substantially comply with its requirements. *Jacobs v. Pyle,* 52 S.D. 537, 219 N.W. 247 (1928); *Harris v. King,* 21 S.D. 47, 109 N.W. 644 (1906); *Lucas v. Ringsrud,* 3 S.D. 355, 53 N.W. 426 (1892). However attractive it might be to liberally construe a statute to avoid a result that may appear harsh, we will not so act when such action would do violence to the plain language of the statute. *Johnson v. Herseth,* 246 N.W.2d 102 (S.D.1976).

We have held that the absence of a properly completed circulator's verification renders a referendum petition invalid. *Corbly v. City of Colton,* 278 N.W.2d 459 (S.D. 1979); *Nist v. Herseth,* 270 N.W.2d 565 (S.D.1978). The purpose of the verification is to insure that the persons whose names appear on the petition did, in fact, sign such petition. *Corbly,* supra; *Nist,* supra. We see no reason why the same analysis should not apply to the petitions in the case before us.

Signing a circulator's verification after the deadline and backdating it to the date when it was originally submitted does not cure the defect. As this court stated in *O'Brien v. Pyle,* 51 S.D. 385, 393, 214 N.W. 623, 626 (1927), "No one is authorized by law to doctor up a sick petition." Also, the receipt of erroneous advice from the school district's business manager did not excuse the candidates from following the clear and explicit directions of the legislature.[2] *See*

---

1. The nature of this action, therefore, is different from the action commenced in circuit court prior to the election. Consequently, the defendants' claim of res judicata is without merit.

2. Kurtenbach and Scholten place much reliance on *Wingert v. Urban,* 250 N.W.2d 731 (Iowa 1977), for the proposition that statutory noncompliance will be excused because of exceptional circumstances. As in the case at hand, a

*Corbly v. City of Colton,* supra; *State v. Till,* 50 S.D. 346, 210 N.W. 157 (1926). A judgment in quo warranto shall be rendered upon the right of the defendant, or both upon the right of the defendant and upon the right of the party alleged to be entitled to office, as justice shall require. SDCL 21–28–8. See, e.g., *Burke v. Schmidt,* 86 S.D. 71, 191 N.W.2d 281 (1971) (plaintiffs held to be entitled to office). SDCL 12–6–9 provides that if only one nominating petition is filed for a board vacancy, the person filing such is entitled to a certificate of election in the same manner as if he were a successful candidate after election. Since Burns was the only candidate who filed a valid nominating petition, he is the only party entitled to the office of school board member.

A judgment consistent with this opinion will be entered.

FOSHEIM, C.J., and DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

Elections will come and go and office holders are but straw blowing in the winds of time but the integrity of elections, upon which a free people are dependent for the blessings of liberty, may only be maintained by observance of the law. Kurtenbach and Scholten did not comply with the election laws. Thus, I join the majority opinion and, in so doing, vote for legal principle and not their personal popularity at the polls.

Popularity wafts in the wind. Principle does not. Principle is like a great mountain in a violent storm. Though the lightning and thunder crash upon it with great fury, the mountain, after the storm, stands craggy, undefeated and as a symbol of strength. Legal principle cannot proudly hold its head aloft with illegal backdated verifications on petitions.

A writ of quo warranto is an archaic writ still in practice, which was developed from the English law. It was formulated as a writ of right for the king against any who claimed or usurped an office or liberty to specifically inquire into *by what authority* that person supported his claim of right. Essentially, the writ of quo warranto commands a person to show *by what warrant* he exercises such office or liberty, never having had an original grant of the right. Black's Law Dictionary 1131 (5th ed.1979). Quo warranto is an extraordinary proceeding and is prerogative in nature. Essentially, it is addressed to preventing a continued exercise of authority unlawfully asserted. *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). Here, although defendants won the election by popular vote, their assertion of the office is unlawful for their failure to sign the circulator's verification. The gravamen of defendants' legal plight is epitomized and emphasized by testimony on June 1, 1982, at Brookings, South Dakota, in a court trial resolved against the present petitioner. Following are questions by Attorney Fite on behalf of plaintiff Burns in that action and answers thereto by Mr. Bonaiuto, the school's business manager.

Q. When you examined these nominating petitions on May 17th, did you note any omissions from the form captioned, "Certification by Person Circulating Petition"?

A. Yes.

Q. And what did you notice about that?

A. That three of the four petitions did not have that portion of the petition filled out.

Q. And were there any entries in any of the blanks?

A. No.

Q. And what candidates' names were on those three nominating petitions?

A. Aelred Kurtenbach, Benjamin Kantack, Marvin Scholten.

candidate in the *Wingert* case relied on erroneous information given by an official. This court, however, has not recognized the "exceptional circumstances" rule. In addition, unlike the candidate in *Wingert,* the candidates in this case were able to receive all the necessary information from the plain language of the relevant statute.

Q. So in other words, there was neither the signature of the circulator nor the officer administering the oath on those nominating petitions?

A. That's correct.

Q. What did you do after discovering that this form had not been filled out?

A. The superintendent and I discussed this issue, and Mr. Mickelson was contacted to check the legal precedent, if there was any in this area, and what we should do to proceed.

Q. And following contacting Mr. Mickelson, what action did the school district take?

A. Mr. Mickelson submitted a letter to the superintendent, and the school district felt that this, based on Mr. Mickelson's opinion, was a correctable omission, and that we had the candidates come into the office and sign the verification portion of the petition, correcting the error or omission of this section.

Q. Did the school district then contact these three individuals: Mr. Kantack, Mr. Kurtenbach, and Mr. Scholten?

A. Yes, to my knowledge, that's true.

Q. And do you recall when the verification was executed on behalf of those three individuals?

A. I believe it was the 18th. To the best of my recollection, it was the 18th.

Q. And the filing deadline for nominating petitions is what date?

A. Friday, the 14th of May, 5:00 p.m.

Q. So the verification would have been added after the filing deadline on those three petitions?

A. Yes.

Q. Now, I note that those verifications are not dated when they were actually signed, are they?

A. No.

Q. What date appears on those petitions?

A. The date appears as the date that the petitions were handed in before the deadline.

Q. So in other words, the verifications were backdated to reflect the date the petition was actually submitted to the business office?

A. Yes.

The defect in the nominating petitions were not mere technical defects as the provisions of SDCL 13–7–6 are mandatory. *Hornbeck v. Askin,* 286 A.D. 1114, 145 N.Y. S.2d 628, aff'd, 309 N.Y. 850, 130 N.E.2d 648 (1955), is excellent authority for our holding herein for, in that case, it was held that improper authentication could not be excused and the statutory requirements could not be altered.

Perhaps this decision will be viewed as being harsh. Its impact must be weighed against the safeguards which the statute provides, namely to prevent any type of fraud in the election process. I am not suggesting that defendants perpetrated fraud but there here existed a serious irregularity that went to the heart of the election process. The advice of the business manager and, later, the advice of the school district's attorney to change the verifications, is not an excuse for noncompliance with the statute. *See State ex rel. Ahlgrimm v. State Elections Bd.,* 82 Wis.2d 585, 263 N.W.2d 152 (1978), where a candidate for circuit court judge learned alas, alack, that he could not rely upon false information as a basis for a theory of substantial compliance and substitute same for the mandatory requirements of a statute.