TENNYSON, Appellant v. SAYLER, County Auditor, Respondent

(66 N. W.2d 393)

(File No. 9492. Opinion filed October 22, 1954)

**Bangs & McCullen,** Rapid City, and **Joseph M. Butler,** Rapid City, for Appellant.

**Robert W. Gunderson,** State's Atty., Pennington County, Rapid City, for Respondent.

PER CURIAM. The plaintiff applied to the trial court for a writ of mandamus to command the defendant, auditor of Pennington County, to accept and file his certificate of nomination as an independent candidate for the office of County Commissioner, 5th District, Pennington County. An alternative writ was issued, and a return thereto made. The hearing resulted in a judgment dismissing the writ. The plaintiff has appealed.

Whether SDC Supp. 16.0615, which provides that certificates of nomination of independent candidates shall be filed at least ninety days before the date of the general election, remained effective and in force when plaintiff's certificate was offered for filing is the question to be decided. Plaintiff's certificate was offered for filing less than ninety days before the date of the general election. The trial court was of the view that the cited statute was then in force.

According to the provisions of SDC 16.0502, such a certificate of nomination must be filed with the county auditor not less than forty days before the election. However, SDC Supp. 16.0615, supra, providing that such a certificate must be filed not less than ninety days before the election, was enacted as Section 6 of Ch. 2, Laws 1944, SDC Supp. 16.06. But by Section 11, of that Act, SDC Supp. 16.0620, it was provided "This act shall remain in force during such period as the existing World War II shall continue and until six months after a declaration of the termination thereof by the President of the United States, and no longer."

It is the position of the appellant that World War II had terminated and its termination had been proclaimed by the President (a) on December 31, 1946, or (b) in any event, not later than April 28, 1952, and therefore, that Ch. 2, Laws 1944, SDC Supp. 16.06, expired and became ineffective not later than six months from one or the other of those dates.

■ ■ Pointing to the proclamation of the President No. 2714, that hostilities had ended on December 31, 1946, counsel first argue that Ch. 2, Laws 1944, expired six months from the date thereof. The contention, in our opinion, ignores the very purpose of the enactment. The chapter was enacted in order that those of our qualified electors who were absent from the state in the service of their country might be assured of an opportunity to exercise their rights of franchise. Obviously the legislature understood that the need for such legislation would continue until those electors had returned to their homes. Because it would not have anticipated any considerable demobilization after the cessation of hostilities until a technical peace had been achieved, we are of the opinion that by Section 11 of the Act, SDC Supp. 16.-

0620, the legislature sought to describe a formal, technical termination of a state of war and declaration thereof by the President. For that reason we hold plaintiff's first contention untenable.

In anticipation that the court would adopt the interpretation of Section 11, Ch. 2, Laws 1944, SDC Supp. 16.0620, just expressed, appellant next contends that the chapter in question expired as of six months from April 28, 1952.

As the basis for that contention he first cites the Treaties of Peace with Italy, 61 Stat. 1245, Bulgaria, 61 Stat. 1915, Hungary, 61 Stat. 1757, Rumania, 61 Stat. 2065, and the proclamations of the President dealing respectively with the same; second, he cites the House Joint Resolution To Terminate State of War Between The United States Government and the Government of Germany, approved by the President October 19, 1951, 65 Stat. 451, and proclamation No. 2950 of the President dealing with the same. Cf. U. S. Code and Congressional Administrative News, 1952, Vol. 1, p. LXVIII, and finally he cites the Treaty of Peace with Japan, Vol. 98, part 2, Congressional Record, pp. 2596-2606, and a proclamation of the President, No. 2974, executed and dated April 28, 1952, reading as follows:

> "Whereas by Proclamation No. 2352 of September 8, 1939 the President proclaimed the existence of a national emergency in connection with and to the extent necessary for the proper observance, safeguarding, and enforcing of the neutrality of the United States of America and the strengthening of our national defense within the limits of peacetime authorizations; and

> "Whereas by Proclamation No. 2487 of May 27, 1941, the President proclaimed the existence of an unlimited national emergency, requiring that the military, naval, air, and civilian defenses of this country be put on the basis of readiness to repel any and all acts or threats of aggression directed toward any part of the Western Hemisphere; and

> "Whereas acts of aggression against the United States of America by Axis Powers subsequently led

to declarations by the Congress of the existence of states of war between the United States of America and Japan, Germany, Italy, Hungary, Rumania and Bulgaria; and

"Whereas the state of war between the United States of America and Japan, which was the last of the aforesaid states of war still existing, was terminated by the coming into force this day of the Treaty of Peace with Japan signed at San Francisco on September 8, 1951:

"Now, Therefore, I, Harry S. Truman, President of the United States of America, do proclaim that the national emergencies declared to exist by the proclamations of September 8, 1939, and May 27, 1941, terminated this day upon the entry into force of the Treaty of Peace with Japan.

"Nothing in this proclamation shall be construed to affect Proclamation No. 2914, issued by the President on December 16, 1950, declaring that world conquest by communist imperialism is the goal of the forces of aggression that have been loosed upon the world, and proclaiming the existence of a national emergency requiring that the military, naval, air, and cilivian defenses of this country be strengthened as speedily as possible to the end that we may be able to repel any and all threats against our national security and to fulfill our responsibilities in the efforts being made through the United Nations and otherwise to bring about lasting peace; and nothing herein shall be construed to affect the continuation of the said emergency of September 8, 1939, as specified in the Emergency Powers Interim Continuation Act, approved April 14, 1952 (Public Law 313—82d Congress), for the purpose of continuing the use of property held under the Act of October 14, 1940, ch. 862, 54 Stat. 1125, as amended.

"In Witness Whereof, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

"Done at the City of Washington this twenty-eighth day of April in the year of our Lord nineteen hundred [Seal] and fifty-two, and of the Independence of the United States of America the one hundred and seventy-sixth.

"Harry S. Truman

"By the President:
"Dean Acheson,
"Secretary of State."

From this background appellant argues with some force that World War II has been terminated and each termination had been sufficiently proclaimed by April 28, 1952 to comply with the language of Section 11, Ch. 2, Laws 1944, supra. We do not share that view.

In writing a special concurrence in Woods v. Clyod W. Miller Co., 333 U.S. 138, at page 147, 68 S.Ct. 421, at page 425, 92 L.Ed. 596, the late Mr. Justice Jackson said, "We * * * have made no peace terms with our allies not to mention our principal enemies." That condition has not changed. The Soviet Government continues to frustrate our efforts to conclude a treaty of peace with a united free Germany. See Presidential Proclamation No. 2950, cited supra. Because of these facts and also because of the "cold war" there has been no such return to normalcy as the legislature thought would follow a termination of World War II. The public interest which called the 1944 Act into being remains to be served. Acting under its provisions great numbers of our absentee electors are about to cast their ballots in the November election. We should not declare that act inoperative, if there be any other permissible view.

The question which confronts us is whether the exact conditions which the legislature selected to render the 1944 Act inoperative have been satisfied.

It may be that the first condition has been satisfied. We recognize that the termination of a war is a political function and that it may be terminated in different ways. Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 881. Cf. 47 Columbia L.Rev. 255. We assume such a termination of World War II for the purposes of this decision, and pass on

to a consideration of the final condition imposed by the legislature, viz., "a declaration of the termination thereof by the President of the United States".

██ The scholarly brief of counsel for appellant cites us to no proclamation of the President of the United States wherein he declares and proclaims the termination of World War II, and our research which, because of the exigencies of the occasion, has been somewhat limited, has brought no such declaration to light. It is plain to us that the legislature anticipated that the President would eventually formally declare the termination of World War II, and therefore, it adopted such a declaration or proclamation as a condition which would serve in terminating the act in question. In view of the fact that no such declaration has been made, we hold the act remains operative.

██ ██ In connection with the foregoing contention we are asked by counsel to hold that the President declared the termination of World War II by the recitation contained in the President's Proclamation No. 2974, quoted supra, reading "Whereas the state of war between the United States of America and Japan, which was the last of the aforesaid states of war still existing, was terminated by the coming into force this day of the Treaty of Peace with Japan signed at San Francisco on September 8, 1951." The answer to that suggestion is revealed by reading the quoted language in context. When the President's Proclamation is read as a whole it plainly appears that he did not intend to declare and proclaim that World War II was terminated, and that he intended to do no more than to proclaim the termination of certain described emergencies.

Our holding herein is in keeping with the interpretation of the 1953 Legislature. It treated the 1944 Act as operative and enacted amendments to its provisions. Ch. 75, Laws 1953.

Being of the opinion that Ch. 2, Laws 1944, as amended by Ch. 75, Laws 1953, is operative and controlling, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

All the Judges concur.