Warren JOHNSON, Petitioner
and Respondent,

and

Donald P. Mackintosh, Party Petitioner
and Respondent,

v.

Lorna HERSETH, Secretary of State of
the State of South Dakota, Defendant
and Appellant.

No. 12053.

Supreme Court of South Dakota.

Sept. 29, 1976.

William J. Janklow, Atty. Gen., R. Van Johnson, Asst. Atty. Gen., Pierre, for defendant and appellant.

Joaquin K. Hanson, Hanson & Hanson, Sioux Falls, Frank J. Brady, Brady, Kabeiseman & Reade, Yankton, for petitioner and respondent.

PER CURIAM.

Petitioners sought and were granted a writ of mandamus requiring appellant, sec-

retary of state, to certify the name of petitioner Warren Johnson as a candidate for the state senate on the November general election ballot for Minnehaha County. The secretary of state appealed and this court has expedited this appeal as it is a matter of great public concern.

We reverse.

The trial court incorporated within the findings of fact and conclusions of law, by reference, the court's memorandum decision which contains the following essential facts, to wit:

"That Ronald L. W. Larsen was a successful candidate in obtaining the Republican nomination for the State Senate from Minnehaha County in the primary election in June, 1976;

That Warren Johnson, one of the petitioners herein, was defeated in the primary election;

That petitioner Mackintosh is a resident and elector of Minnehaha County and a registered member of the Republican party;

That on or about August 3, 1976, Mr. Larsen withdrew his name from nomination;

That on August 12, 1976, the Minnehaha County Republican Central Committee met, according to law, and selected petitioner Johnson to fill the vacancy on the ballot created by Larsen's withdrawal;

That on August 13, 1976, Mr. George Robertson, the county chairman for the Republican Party in Minnehaha County prepared a letter to the Secretary of State, in proper form and content, and placed it in an envelope addressed to the Secretary of State, with the necessary amount of postage, into a delivery box of the U.S. Postal Service in Sioux Falls;

That the last day for filing such notice to the Secretary of State was August 30, 1976, but to this date has not been received (through the postal service) by the Secretary of State;

That on August 16 or 17, 1976 the Secretary of State had actual knowledge through the news media of the action of the Minnehaha County Central Committee in selecting Johnson as a successor to Larsen;

That the Secretary of State discussed the nomination of Johnson with members of her staff and requested advice from the Attorney General as to whether a defeated primary candidate was qualified to be so nominated; that she was advised by the Attorney General's office that such was proper;

That on August 31, 1976, petitioner Johnson was advised by the news media that his name would not be placed on the ballot due to the fact that his name was not certified to by a filing in the Secretary of State's office;

That on September 7, 1976, Johnson's attorney filed a copy of Mr. Robertson's letter with the Secretary of State;

That the Secretary of State still refused to certify the name of Warren Johnson to the Minnehaha County Auditor for placement on the ballot."

Further, in the trial court's memorandum opinion it is stated that:

"SDCL 12–8–6 in substance requires that nominations by party committees to fill vacancies occurring in nominations made in primary elections are to be filed with the Secretary of State not less than 65 days prior to the election. This year this means that the same were to be filed on or before August 30. It is undisputed that the letter submitted by Mr. Robertson, as chairman of the Minnehaha County Republican Party, was in proper form and sufficient to satisfy that statute. There is no dispute that Mr. Robertson did in fact place it in a U.S. Postal service mail box some 17 days in advance of the time provided for filing. Also, there is no dispute but that the Secretary of State never received such letter, even to this day, through the mail service. The question, then, is what is the legal significance of this presumably 'postal' dilemma."

On these uncontested facts the trial court entered the following conclusions of law:

"CONCLUSIONS OF LAW

1. That the petitioner, Warren Johnson, has complied with all the legal re-

quirements of the election laws of the State of South Dakota with the exception of the timely receipt by the respondent of the petitioner's certificate of nomination.

2. That the statutory provision for filing a certificate of nomination with the Secretary of State by the nominating officials to fill a vacancy before a general election is directory rather than mandatory.

3. That it would be inequitable to deny the issuance of a writ of mandamus to require the respondent to certify petitioner's name for placement on the ballot.

4. That the petitioner, Warren Johnson, is entitled to a writ of mandamus requiring the Secretary of State of the State of South Dakota, to certify petitioner's name for placement on the ballot, as Republican Party Candidate for State Senate from Minnehaha County in the general election to be held November 2, 1976."

As we perceive the issues, as they were presented to this court on appeal, they are: (1) whether the statutory provisions involved are mandatory or directory, and (2) what constitutes filing within the meaning of SDCL 12–8–6.

Conceding the factual situation to be true, we hold that the trial court erred in its conclusions of law numbers 2 and 3 which lead to an improper conclusion of law in number 4. The trial court's holding, "That the statutory provision [SDCL 12–8–6] for filing a certificate of nomination with the Secretary of State by the nominating officials to fill a vacancy before a general election is *directory* rather than

*mandatory*" (emphasis added), overlooks other parts of the election law which lead to a contrary result.

The basic statutes which are controlling in this case are SDCL 12–6–56 and 12–8–6, which read as follows:

"12–6–56. *If a vacancy occurs by reason of death or withdrawal after a primary election, a party candidate for public office may be replaced by a new nominee if a meeting of the appropriate party central committee can be held and the results certified to the appropriate official within the times prescribed by § 12–8–6.* Such a vacancy, if a candidate for presidential elector, United States senator, or state office, shall be filled by the state party central committee; by the party state central committeemen of the district, in case of vacancy in nomination for representative in Congress or district office; by the county central committees of the joint legislative district, in case of a vacancy in party nominee of a joint legislative district; and by the party county central committee of the county in which a vacancy occurs in party nominee for county and legislative offices." (emphasis added)

"12–8–6. *Nominations by party committee to fill vacancies occurring in nominations theretofore made in primary elections and certificates of nomination to be filed with the secretary of state shall be filed not less than sixty-five days before the day fixed by law for the election of the persons nominated;* those to be filed with the county auditor shall be filed not less than sixty days before the day fixed for such election." (emphasis added)

The provisions of SDCL 12–6–56 and 12–8–6,[1] together with SDCL 12–16–1, are

---

1. Prior to their revision by Chapter 76 of the Session Laws of 1973, the provisions of SDCL 12–8–3 through 12–8–6, as they appeared in the parent Volume 5 of SDCL, created an apparent conflict as to whether the filing requirements were permissive or mandatory by the use of "may" in one instance and "shall" in all others. The text of those statutes then read:

"12–8–3. Nominations by party committees to fill vacancies occurring in nomina-

tions theretofore made at a primary election *may be filed* with the secretary of state at least ninety days and with the county auditor at least forty days before the date of the general election." (emphasis added)

"12–8–4. Certificates of nomination of county and precinct officers executed pursuant to chapter 12–7 *shall be filed* with the auditor of the county wherein such officer or officers are to be elected." (emphasis added)

geared to comply with the absentee voting law, SDCL 12–19,[2] and particularly to accommodate the Federal Absentee Voting Assistance Act, 50 U.S.C. § 1452(12) to "provide that absentee ballots will be available for mailing to the applicant as soon as practicable before the last date on which such ballot will be counted." To that end the legislature has enacted SDCL 12–16–1, as last amended by S.L.1974, Ch. 118, § 69, which reads as follows:

"12–16–1. It shall be the duty of the county auditor to provide printed ballots for every election in which the voters of the entire county participate. Printed ballots for a primary election shall contain the name of every candidate who has filed for nomination and is approved. Such printed ballots for the election of officers shall contain the name of every candidate whose nomination has been certified or filed with the county auditor in the manner provided by law unless they are deemed elected as having no opposi-

"12–8–5. Certificates of nomination of candidates for office to be filled by the electors of the entire state or any division or district thereof greater than a county executed pursuant to chapter 12–7 *shall be filed* with the secretary of state." (emphasis added)

"12–8–6. *Certificates of nomination to be filed with the secretary of state shall be filed* not less than ninety days before the day fixed by law for the election of the persons nominated; those to be filed with the county auditor shall be filed not less than forty days before the day fixed for such election." (emphasis added)

As indicated in the 1975 Revised Volume 5, the original SDCL 12–8–3 to 12–8–5 were repealed but the source note indicates that the compilers of the now codified laws treated SDCL 12–8–3 as being incorporated within 12–8–6. Though not necessarily controlling, this legislative treatment of the preexisting statutes, eliminating the word "may" and adhering to the use of the word "shall" in the revision, lends support to the holding of this court in this case.

2. The language which has been emphasized in SDCL 12–6–56, 12–8–6 and 12–16–1 and the pattern otherwise established, clearly reflects the legislative mandate that a withdrawal of a candidate must be accomplished at least 75 days before an election, SDCL 12–6–55, in order that the party committee can give a notice which can bring about a meeting upon notice as required by SDCL 12–6–57. If a meeting of

tion. Sample ballots must be printed on paper of a different color from the official ballot but in the same form. Such sample ballots and *official ballots shall be printed and in the possession of the county auditor* not later than twenty days preceding a primary for *primary elections and not less than fifty days prior to the general for general elections.* The county auditor shall also prepare the necessary ballots whenever any question is required to be submitted to the electors of the county. Ballots for general elections shall be of the style and form prescribed in §§ 12–16–2 to 12–16–11, inclusive." (emphasis added)

SDCL 12–6–56, 12–8–6 and 12–16–1, when construed together, are plain and unambiguous. This court has in the past found no ambiguity in similar statutes which dealt with the same subject. This court construed §§ 7107 and 7185 of the Revised Code of 1919, which provided for a party caucus type nomination and not for

the committee cannot be noticed and held within time to certify the result to the treasurer within the time requirements of SDCL 12–8–6, then it cannot be done at all since the secretary of state can only certify nominations to the county auditor if "certificates of nomination have been filed in his office." SDCL 12–8–8.

As a general principle, the election laws are drawn to provide a means for securing ballots that can be made available to absentee voters. The ballots are required to be available not less than 50 days prior to the general election under SDCL 12–16–1 to accommodate the Federal Voting Assistance Act of 1955 (50 U.S.C. § 1452, in accordance with SDCL 12–19). SDCL 12–19–3 requires the auditor to forward ballots to an applicant for absentee ballots within 48 hours after receipt of the ballots. This court cannot ignore the state law which has balanced rights of voters against those of potential candidates to comply with the Federal Voting Assistance Act of 1955 and requires a timely filing of a certificate of nomination. SDCL 12–6–56, 12–8–6. As stated by this court in *Jacobson v. Nelson,* 1946, 71 S.D. 350, 24 N.W.2d 332,

"Essential to providing a method of voting by members of the armed forces stationed in all parts of the world, is having ballots printed in time to allow being sent to and returned from these distant points." See also *Tennyson v. Sayler,* 1954, 75 S.D. 390, 66 N.W.2d 393.

the primary election as we now know it, and found no such ambiguity. *State ex rel. Picton v. Doolittle,* 1926, 50 S.D. 298, 209 N.W. 851. Although §§ 7107 and 7185 of the Revised Code of 1919 find no counterpart in current law, those sections of the law dealt with the necessity of setting deadlines to be met for the purpose of getting ballots printed and to the voters, as do the controlling statutes in this case. This court, in *Burtch v. Medin,* 1926, 50 S.D. 343, 210 N.W. 187, construing RC 1919, § 7122, together with the then provisions of §§ 7188, 7206 and 7236 of the Revised Code of 1919, which were the predecessors of what are now SDCL 12–5–24, 12–6–55 and 12–16–1, adhered to *Picton v. Doolittle,* supra, and held that those statutes, which authorized a substitution of candidates and established the time for the performance of the necessary acts to accomplish a substitution, are mandatory.[3] What was stated in

*Burtch v. Medin,* supra, is equally true in the case before us—"we see no reason to adopt a different rule in this case."

The trial court's conclusion No. 3 "That it would be inequitable to deny the issuance of a writ of mandamus to require the respondent to certify petitioner's name for placement on the ballot" places emphasis on equity but ignores the plain mandate of the law. "Mandamus is not a proceeding in equity, but a legal proceeding to enforce legal rights." *Sioux Falls v. Sioux Falls Traction System,* 1928, 53 S.D. 471, 221 N.W. 84. In this vein, our court, in *Burtch v. Medin,* supra, stated:

"It is argued by counsel for plaintiffs that their nominating certificates were tendered in time to be printed on the official ballot and within the time fixed by section 7236 [SDCL 12–16–1], and that no one will be injured by disregarding the 70-day period fixed by section 7206.

---

**3.** This court in *Burtch v. Medin,* 50 S.D. 343 at 345, 210 N.W. 187, cited *Brodie v. Hook,* 1909, 135 Ky. 87, 121 S.W. 979, as authority for its holding that the time requirements for filing certificates of nomination were mandatory. While the Kentucky court in *Brodie* was dealing with a statute governing filing requirements for nominating petitions, we find the statement of that court meaningful as it explains the necessity for deadlines being established by law and is in accord with the general rule set forth at 29 C.J.S. Elections § 137, to wit:

"As a rule statutory provisions with respect to the *time of filing a certificate or* petition are regarded as mandatory, and those filed subsequent to the time have been held void or ineffectual."

The Kentucky court, reviewing the authority which then existed on the subject matter, principally 15 Cyc. 338, stated:

"In view of these authorities, and it seems that there are none to the contrary, we are of the opinion that appellee was correct in refusing to print appellant's name on the ballots to be voted at the election to be held November 2, 1909. We are of the opinion that the General Assembly enacted this mandatory provision requiring the certificates and petitions of nomination to be filed not less than fifteen days before the election, so as to give the clerk that much time to prepare and have the ballots printed and distributed among the polling places in the county before the day of the election, and without being annoyed by litigation by someone attempting to get some name on or off the

ballotts [sic], and without being importuned by candidates and their friends for that purpose. The statute makes it obligatory *upon all persons who desire to be candidates at an election to see to it that their certificates of nomination, or the necessary papers entitling them to have their names placed on the ballots to be voted,* are filed not less than fifteen days before the election. If they neglect to do this, they must suffer the loss. Of course, the rule would be otherwise if the clerk fraudulently or otherwise wrongfully prevented the filing of the certificate or petition within the time required by the statute." 135 Ky. at 92, 93, 121 S.W. at 980. (emphasis added)

Respondents, in their brief and upon oral argument, claim that SDCL 12–8–6, should be liberally construed on the theory that the chairman of the party central committee is an "election official" within the meaning of SDCL 12–6–56. Party officials are not included within the class of persons defined by SDCL 12–1–3(6), " 'Election officials,' state and local officials charged with the duty of conducting elections and the canvass of returns." Were this court to expand the definition, the question remains whether the duty imposed, absent a clear statement of the duty by statute, falls upon the candidate or the party officials. Under the circumstances here presented, the statement of the Kentucky court above set forth and which we have emphasized, holding that it is obligatory upon the candidate to see that the papers are filed which entitle him to have his named placed on the ballot, is particularly meaningful.

[SDCL 12–6–55]. This may be true, and no doubt it is just as true of many other provisions of the primary law, but, so long as the people of this state retain the present law that governs our primary elections, its provisions must be obeyed." 50 S.D. 345, 346, 210 N.W. 187, 188.

Turning to the second issue, SDCL 12–8–6 requires a certificate of nomination by a party committee to be filed with the secretary of state not less than sixty-five days before an election. The question is whether this requirement is satisfied when a certificate of nomination is deposited in the mails for delivery to the secretary of state or whether the certificate must be physically delivered, by the United States Postal Service or otherwise, to the secretary of state's office within the time limit fixed by the statute.

In *Federal Land Bank of Omaha v. Le-Mars Mutual Ins. Co.,* 65 S.D. 143, 272 N.W. 285, this court held that a statute that required a notice of appeal to be filed with the clerk of courts meant exactly what it said—that the notice had to be physically present in the clerk's office within the time fixed by the statute and that the fact that the notice had been deposited in the mails within the time period was not sufficient compliance with the statute.

In *State ex rel. O'Hearn v. Erickson,* 152 Minn. 349, 188 N.W. 736, the Minnesota Supreme Court, in construing a statute that required an affidavit of candidacy to be filed at least forty days before the primary election, held that an affidavit is not filed until it reaches the proper office, stating that:

"The language of the statute is plain and unambiguous, definitely requires the affidavit to be filed 'at least forty days before' the election, and there is no room for construction, practical or otherwise, at variance with its clear terms. * * * The practice of the election officers in heretofore accepting such filings cannot abrogate the specific requirements of the statute and constitutes no valid precedent, and cannot be given the effect contended for by petitioner. * * * The

statute is mandatory. * * * A distinction is made by the courts between requirements and duties imposed upon election officers and things required by the voter, and acts made necessary to initiate a valid candidacy for office—the former being generally held directory; the latter, mandatory. * * * The distinction is sound and applicable here." (citations omitted) 152 Minn. at 351, 188 N.W. at 736.

In *Harris v. Donovan,* 269 Minn. 574, 129 N.W.2d 797, the Minnesota Supreme Court followed the holding in the *Erickson* case and again held that depositing an affidavit of candidacy in the mail does not constitute filing within the meaning of the statute.

■ Likewise, we conclude that SDCL 12–8–6 requires a nomination made by a party committee to be delivered to the secretary of state's office within the time fixed by that statute. The fact that the secretary of state may have learned from the news media that petitioner had been selected by the Minnehaha County Republican Central Committee to fill the vacancy created by the withdrawal of a successful candidate is irrelevant. There was nothing before the secretary of state to act upon, and petitioner can point to no statutory duty that the secretary of state failed to perform. Had a certificate been timely filed and then rejected as not being in proper form, a question of substantial performance might arise—a question that is not before us in the instant case. It is one thing to liberally construe that which has been filed within the time fixed by statute. It is quite another to read the filing requirement itself out of the statute under the guise of liberal construction in order to avoid a result that may to many seem harsh indeed. However attractive it might be to follow the latter course, we would do violence to the plain language of the statute by doing so. Rather, we must hold that because petitioner's certificate of nomination was not filed within the time fixed by SDCL 12–8–6, the secretary of state properly refused to certify petitioner's name for placement on the general election ballot.

We have considered petitioner's claim that the application of SDCL 12–8–6 to bar the placing of his name upon the ballot violates Article VI, Section 19 of the Constitution of the State of South Dakota, which guarantees that "Elections shall be free and equal." We hold that contention to be without merit. The entire statutory scheme which we have heretofore discussed places no undue burden upon potential candidates, and we conclude that the statutes involved represent a reasonable exercise of legislative authority.

The order of the trial court is reversed and the writ quashed.